## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANTHONY DELCAVO,<br>individually and on behalf of<br>all others similarly situated, | ) ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| TOUR RESOURCE CONSULTANTS LLC, | ) ) | |
| Defendant. | ) | |

## CLASS ACTION COMPLAINT

Plaintiff Anthony Delcavo, individually and on behalf of all others similarly situated, states and alleges as follows:

### INTRODUCTION

1.　Plaintiff Anthony Delcavo ("Plaintiff"), like many other individuals, contracted with Defendant Tour Resource Consultants LLC ("Defendant" or "TRC") for tour and travel services before the COVID-19 pandemic.

2.　Plaintiff paid Defendant an initial registration fee/deposit in the amount of $400.00 for a trip to Italy.

3.　As we now know, however, COVID-19 dominated 2020.

4.　On January 31, 2020, the World Health Organization ("WHO") issued a global health emergency for just the sixth time in history.

5.　On February 2, 2020, countries began imposing air-travel restrictions.

6.　On February 3, 2020, the U.S. declared a public health emergency.

7.　On March 9, 2020, Italy implemented a nationwide lockdown.

1

8.      On March 11, 2020, the WHO declared COVID-19 a pandemic.

9.      On March 13, 2020, the U.S. declared COVID-19 a national emergency.

10.     That same day, the U.S. issued a ban on non-US citizens traveling from Europe.

11.     On March 16, 2020, the Bach Festival Society of Winter Park, Inc. ("Bach") advised that Plaintiff's reservation would be canceled because of international travel restrictions caused by the global COVID-19 pandemic.

12.     While Plaintiff understands and accepts why the cancellation occurred, Defendant unlawfully retained Plaintiff's registration fee/deposit by categorizing it as a "cancellation fee" *despite the fact that:* (1) Plaintiff did not cancel the reservation; (2) Defendant's cancellation policy defined a "cancellation" as a written communication by a purchaser that he was canceling his reservation; and (3) Plaintiff did not even receive Defendant's cancellation policy until after his reservation was cancelled.

13.     Plaintiff brings this Class Action Complaint on behalf of himself and all other similarly situated travelers who paid registration fees/deposits to Defendant in exchange for tour and travel services, had their reservations canceled by Defendant, and were denied a refund of their registration fees/deposits.

## PARTIES

14.     Plaintiff is a resident of the State of Colorado.

15.     Defendant is a Kansas limited liability company with its principal place of business at 12440 W. 62nd Terrace, Suite A, Shawnee, Kansas 66216. Defendant can be served through its Registered Agent and President, Maury L. Schulte, at this address.

16.     Although Defendant has a physical location in La Mesa, California, on information and belief, Shawnee, Kansas has been the Defendant's principal place of business during all times relevant to this case, including the present.

17.     On information and belief, all of Defendant's members are Kansas residents.

## VENUE AND JURISDICTION

18.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332 since the matter in controversy exceeds $75,000.00 and is between citizens of different states.

19.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant resides in this District and a substantial part of the events and omissions giving rise to the claims in this case occurred in this District.

## FACTS COMMON TO ALL COUNTS

20.     According to its website, Defendant is a travel agency specializing in unique, customer-tailored group travel experiences (performance, academic, and other themed tours), providing complete travel services, including tour conception and planning, tour and events promotion, and travel logistics.

21.     Defendant focuses on two primary types of tours: (1) performance tours for bands, orchestras, choirs, and other performing ensembles; and (2) academic tours, study abroad, and other themed tour experiences.

22.     In early 2019, Bach was making plans to travel to Italy in June 2020 to perform as a musical group. Bach arranged with Defendant to provide its members with guided tour services during their trip.

23.     Plaintiff's son was a Bach member, and Plaintiff made plans to travel to Italy with his son and the musical group.

24.    On March 8, 2019, Plaintiff paid Defendant $400.00 as an initial deposit for its anticipated tour services during the Italy trip.[1]

25.    Although Plaintiff did not receive Defendant's cancellation policy until after his reservation was cancelled, Bach's agreement with Defendant apparently included a policy that authorized Defendant to charge fees for cancellations occurring after November 14, 2019. The amount of the fee varied depending upon the timing of the cancellation.

26.    On March 4, 2020, Plaintiff and others were notified that Defendant and Bach would be meeting to discuss COVID-19.

27.    On March 9, 2020, the Italian government imposed a nationwide lockdown in response to the pandemic. Travel from America remained barred to tourists through June 2020 (the month scheduled for the Tour of Italy trip). *See* https://milanostyle.com/timeline-of-italy-coronavirus-lockdown/.

28.    Defendant and Bach jointly canceled Plaintiff's "booking of Bach Festival Choir & Orchestra Performance Tour of Italy" as international travel had come to a near standstill due to the COVID-19 pandemic.

29.    On March 16, 2020, Bach notified Plaintiff and the other "Tour of Italy" travelers that the trip had been postponed.

30.    On or about March 20, 2020, Mr. Schulte sent a letter "To All Winter Park Bach Festival Choir and Orchestra Travelers" regarding "The Refund Process."

31.    The letter stated, in pertinent part:

We (TRC) will soon begin the refund process through the WeTravel website and our partner, Stripe. We expect to begin the refunds on Tuesday, March 24. The refunds will happen transaction by transaction, and we expect that it may take up to a week to complete the process. We outline the process in the sequence listed below.

---

[1] Plaintiff subsequently tendered an additional $400.00 deposit on behalf of another Class Member.

We also have some good news!  We are offering a $200 credit voucher to all Winter Park Bach Festival Choir and Orchestra travelers who were ever enrolled in the 2020 Italy trip, good for future travel with us in 2021 or 2022. This applies to all Italy 2020 travelers, including those who cancelled their participation earlier.

We have enjoyed working with all of you for the past twenty years, and we look forward to many more good trips together.

Here are the details for the refund process:

1) Travelers fall into various payment categories:  Land-Only, Land and Air, Extension Tour participants, and those opting for the various levels of travel insurance.

2) Extension Tour payments will be refunded 100%.

3) ***The initial deposit of $400 will not be refunded and will serve as your cancellation fee***.

4) Your next payments occurred in November 2019.  Typically, WeTravel handles these older payments by refunding a paper check mailed to you, but they are making an exception in this case and will handle these older payments as if they were more recent.  This means you will get your refund sooner, either by credit card or bank transfer, depending on how you paid. Travelers who paid by paper check will still receive paper check refunds.

5) If you were a Land and Air traveler, and/or purchased travel insurance, your November installment refund will be decremented by the amount of insurance premium (100% non-refundable) and your air fee if you booked air with us ($100, as previously explained by your tour leaders). The remaining November payment balance will be refunded to you. Different travelers will have different refunds, depending on the options they chose when they signed up.

6) The February payment will be refunded in its entirety.  If you paid ahead on what would have been the April payment, you will get all of that back, too.

7) Travelers who paid us directly by check will be refunded by check.

Please be patient as we move through this process.  One problem we may encounter is with canceled or reissued credit cards.  If you know that the card you paid with is no longer valid, you can log into your WeTravel account and go to "Payments."  From there you can update your credit card details before we start processing the refunds.

You should know that we are working very hard to send you back your payments promptly. While it's never pleasant to have a group cancel – even for good reasons – we hope you will remember the good times we have had together in the past and know that we are – as always – committed to continuing to provide you with world-class travel and performance opportunities within our shared passion for music. We look forward to collaborating with you and again soon. And stay healthy, everyone!

(Emphasis added).

32.    After Plaintiff complained about not being refunded his deposit, Mr. Schulte sent Plaintiff a letter dated March 25, 2020, "Re:  Pertinent Details of the Agreement," which attempted to justify Defendant's retention of Plaintiff's and the other Bach members' deposits.

33.    This letter included Defendant's "Cancellation Policy" and a policy regarding "Changes Due to Weather, Flight Delay/Cancellation, War, Disturbance, or Other Causes." These sections provided as follows:

**Cancellation Policy**

A cancellation occurs when one or more Paying Participants communicate by email or fax their intention to cancel their plans to participate in the tour. All cancellations must be sent to TRC by fax (to 913.538.5279), or by email attachment (to Registration@TourResource.com).

A Cancellation Fee will be assessed based on the date the cancellation is received by TRC, as follows:

| | | |
|---|---|---|
| Cancellations on or before 14-Nov-19 person fee | $0 | per |
| Cancellations after 14-Nov-19 and on or before 13-Jan-20 person fee* | $200 | per |
| Cancellations after 13-Jan-20 and on or before 27-Feb-20 person fee* | $400 | per |
| Cancellations after 27-Feb-20 and on or before 17-Apr-20 person fee* | $600 | per |

Cancellations after 17-Apr-20, a minimum of $1,000 per person fee, but may be charged up to 100% of the total per person tour price.

*Plus any airline cancellation fees which may apply

**Changes due to Weather, Flight Delay/Cancellation, War, Disturbance, or Other Causes**

TRC accepts no responsibility for losses or additional expenses incurred by tour participants due to flight cancellations, delays or changes in train, boat, bus or airline schedules and services, weather, mechanical difficulty, strikes, civil disturbances, war, terrorism, acts of government or other authorities, quarantine, force majeur [sic], or other causes. All such losses and expenses must be borne by the tour participants. Travel insurance is available to partially or totally abate some of these expenses. See travel insurance sections, above.

34.     With this letter, Defendant explained that it was withholding Plaintiff's deposit as a "cancellation fee."

35.     According to the "Pertinent Details of the Agreement," which Defendant sent to Plaintiff after-the-fact, a cancellation occurs when a "Paying Participant" communicates via fax or email his intent to cancel the reservation.

36.     Defendant's explanation fails to justify its retention of Plaintiff's deposit because Plaintiff did not cancel the reservation.  Defendant and Bach canceled the reservation.

37.     This fact is confirmed by an April 10, 2020 notification that Defendant sent to Plaintiff via email, which read:

> Hi Tony,
>
> This is an automatic notification that I canceled an option or package for your booking of Bach Festival Choir & Orchestra Performance Tour of Italy.

38.     Because Plaintiff did not cancel the reservation, Defendant was not authorized to retain his deposit as a "cancellation fee."

39.    Further, neither Plaintiff nor Bach was provided with the cancellation policy or "Changes Due to Weather, Flight Delay/Cancellation, War, Disturbance, or Other Causes" provision until the trip had already been canceled, precluding its terms from being contractually binding.

40.    Upon information and belief, Defendant wrongfully withheld its customers' registration fees/deposits for the following reasons:

   a.    Defendant did not incur expenses or damages through the cancellation of tour and travel reservations occasioned by the COVID-19 pandemic.

   b.    Even if it did incur expenses as a result of the cancellations, there is no reasonable relationship between the fees that Defendant collected and any damages it sustained.

   c.    Because it incurred minimal (if any) costs through the cancellations, Defendant's retention of registration fees/deposits is unjust. Simply put, Defendant received a windfall, or something for nothing, at the expense of its customers through the retention of these exorbitant fees.

   d.    Because (at a minimum) Defendant participated in the decision to cancel Plaintiff and other Class Members' reservations, it should not be permitted to charge them cancellation fees. Defendant's own policy indicates that a cancellation occurs when a Paying Participant communicates in writing his or her intention to cancel the reservation.

   e.    Further, because the trip could not have occurred because of Italy's nationwide lockdown and international travel restrictions, it was effectively "canceled" by the COVID-19 pandemic, which is not a "cancellation" within the meaning of Defendant's policy.

## CLASS ALLEGATIONS

41.    Plaintiff, on behalf of himself and the Class, restates and realleges the above paragraphs as if fully set forth herein.

42.     Plaintiff, in accordance with Rule 23 of the Federal Rules of Civil Procedure, brings this action on behalf of himself and a class of similarly situated customers, defined as follows:

> *All persons who have been charged a cancellation fee by Defendant for tour reservations that could not be completed because of travel restrictions related to the ongoing COVID-19 pandemic.*

43.     <u>Class Period:</u>   The class period extends from January 1, 2020 to present.

44.     <u>Exclusions:</u>     Excluded from the Class are:

    a.     Any judge presiding over this action and the family members of any judge presiding over this action;

    b.     Defendant, its subsidiaries, its parents, its successors, its predecessors, any other entity in which Defendant or its parents have a controlling interest, and current or former officers and directors of Defendant, its subsidiaries, its parents, its successors, its predecessors, and any other entity in which Defendant or its parents have a controlling interest;

    c.     Employees who have or had a managerial responsibility on behalf of Defendant, whose act or omission in this matter may be imputed to Defendant for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of Defendant;

    d.     The attorneys prosecuting Plaintiff's claims; and

    e.     Legal representatives, successors, or assigns of any such excluded persons.

45.    Numerosity:   Upon information and belief, the Class Members include hundreds, if not thousands, of customers, making their individual joinder impracticable.

46.    Common Questions of Law or Fact:  The central issue in this case is whether Defendant is wrongfully retaining the Class Members' registration fees/deposits because (1) Plaintiff did not cancel the reservation per the terms of Defendant's policy; (2) the reservation was effectively "canceled" as a result of international travel restrictions preventing tourists from visiting Italy; and (3) the costs Defendant incurred (if any) through the pandemic-related cancellations bear no reasonable relationship to the cancellation fees that it collected from Plaintiff and the Class Members.

47.    Typicality:    A class action is appropriate because Plaintiff's claims are typical of the claims of the Class in that Plaintiff and all Members of the Class were improperly charged "cancellation fees" when they did not, in fact, cancel their reservations.

48.    Adequacy of Class Representative:  Plaintiff has pledged to protect the interests of the Class and has been fairly chosen to do so. Further, Plaintiff's interests do not conflict with the interests of the Class Members he seeks to represent.

49.    Adequacy of Class Counsel:  Plaintiff's counsel has litigated and certified a substantial number of class action cases.

50.    A class action is appropriate because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class Members and establish incompatible standards of conduct.

51.    A class action is appropriate because Plaintiff has acted on grounds generally applicable to the Class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole.

52.    A class action is appropriate in that questions of law or fact common to the Class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

53.    Class treatment will conserve the resources of the courts and litigants, serve judicial economy, and promote efficient adjudication of the Class Members' claims.

## COUNT ONE: UNJUST ENRICHMENT

54.    Plaintiff, on behalf of the Class and himself, restates and re-alleges the above paragraphs as though fully set forth herein.

55.    Plaintiff and the Class conferred a direct benefit on Defendant by paying registration fees/deposits to reserve Defendant's tour and travel services.

56.    Defendant knowingly and willingly accepted and enjoyed the benefits conferred on it by Plaintiff and the Class.

57.    Defendant retained Plaintiff and the Class Members' registration fees/deposits under circumstances that make such retention unjust.

58.    Specifically, because the reservation was canceled, Plaintiff and the Class paid Defendant registration fees/deposits while receiving nothing of value in return from Defendant.

59.    More importantly, it was Defendant—not Plaintiff or the Class Members—who canceled the reservation, in a joint decision with Bach leadership for Plaintiff's Italy trip. Under the plain terms of the policy Defendant drafted, it was only entitled to retain or collect a cancellation fee if a "Paying Participant" canceled the reservation.

60.    Because neither Plaintiff nor the Class Members canceled a reservation, Defendant is not entitled to any cancellation fees and its retention of registration fees/deposits paid by Plaintiff and the Class Members constitutes unjust enrichment.

61.    Furthermore, Defendant either did not incur any costs as a result of pandemic-related cancellations or the per-person costs that it did incur were wholly unrelated to the cancellation fees it collected.

62.    Accordingly, Defendant simply used the "cancellation fees" as a means of collecting a windfall gain or something for nothing.

63.    Plaintiff and the Class Members are entitled to restitution of the amounts wrongfully and improperly retained by Defendant.

64.    Plaintiff and the Class Members seek the imposition of a constructive trust from which Plaintiff and the Class Members may seek restitution.

WHEREFORE, Plaintiff prays, on behalf of himself and all other Class Members, for a judgment in favor of the Class and against Defendant in such amount as is fair and reasonable; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief that the Court deems just and proper.

## COUNT TWO: CONVERSION

65.    Plaintiff, on behalf of the Class and himself, restates and re-alleges the above paragraphs as though fully set forth herein.

66.    By withholding Plaintiff and the Class Members' deposits/registration fees, Defendant assumed and exercised an unauthorized right of ownership over Plaintiff and Class Members' money.

67.    Defendant's assumption of control over Plaintiff and Class Members' money is unauthorized, improper, and unjust in that:

    a. Plaintiff and the Class Members did not cancel the reservation—Defendant canceled the reservation, in concert with Bach.

    b. The cancellation fee Defendant charged Plaintiff and Class Members did not reasonably approximate the losses (if any) Defendant sustained as a result of the pandemic-related cancellations. Accordingly, Defendant simply pocketed Plaintiff and the Class Members' money for no other reason than to obtain a financial benefit.

    c. Because the trip could not have occurred because of Italy's nationwide lockdown and international travel restrictions, it was effectively "canceled" by the COVID-19 pandemic, which is not a "cancellation" within the meaning of Defendant's policy.

68. Defendant is strictly liable for its conversion of Plaintiff and Class Members' money.

69. Plaintiff and the Class Members are entitled to refunds of the "cancellation fees," which Defendant is wrongfully withholding.

70. As a result of Defendant's conversion of the money owed them, Plaintiff and the Class Members have lost the use of their money during a worldwide public health and economic crisis.

WHEREFORE, Plaintiff prays, on behalf of himself and all other Class Members, for a judgment in favor of the Class and against Defendant in such amount as is fair and reasonable; an award of reasonable attorneys' fees, costs, and expenses; pre- and post-judgment interest; injunctive relief as permitted by law and equity; and any other relief the Court deems just and proper.

**COUNT THREE: KANSAS CONSUMER PROTECTION ACT VIOLATIONS**

71. Plaintiff, on behalf of the Class and himself, restates and re-alleges the above paragraphs as though fully set forth herein.

72.    The Kansas Consumer Protection Act ("KCPA"), K.S.A. § 50-623 *et seq.*, prohibits the use of deceptive and/or unconscionable acts and practices in connection with consumer transactions in Kansas.

73.    Plaintiff is a "consumer" as defined by K.S.A. § 50-624(b).

74.    Because he is over 60 years of age, Plaintiff is an "[e]lder person" and "protected consumer" under K.S.A. § 50-676.

75.    Defendant is a "supplier" as that term is defined by K.S.A. § 50-624(l).

76.    Plaintiff's purchase of the tour reservation forming the basis of this Complaint constitutes a "consumer transaction," as defined by K.S.A. § 50-624(c).

77.    Plaintiff has been damaged and is "aggrieved" pursuant to the KCPA as a result of Defendant's conduct.

78.    The KCPA is to be liberally construed to promote its policies of protecting consumers from suppliers that commit deceptive and unconscionable acts and practices. *See* K.S.A. § 50-623; *Williamson v. Amrani*, 283 Kan. 227, 234, 152 P.3d 60, 67 (2007).

79.    Defendant's violations of K.S.A. § 50-626, Deceptive Acts and Practices, include, but are not limited to, the following:

    a.    Defendant made false and/or misleading representations of fact, knowingly or with reason to know, in violation of K.S.A. § 50-626(a);

    b.    Defendant willfully failed to state a material fact and/or willfully concealed, suppressed, and/or omitted a material fact, in violation of K.S.A. § 50-626(b)(3);

    c.    Defendant committed deceptive acts and/or practices in violation of K.S.A. § 50-626 including, but not limited to, the following:

        i.    Falsely representing (by implication) that Plaintiff and Class Members would not be charged cancellation fees if they did not, in fact, cancel their reservations; and

     ii.   Engaging in a pattern of conduct that, when taken in its totality, was deceptive.

80.    Defendant's violations of K.S.A. § 50-627, Unconscionable Acts and Practices, include, but are not limited to, the following:

    a.   Defendant made unconscionable representations and/or misrepresentations and/or engaged in unconscionable conduct, in violation of K.S.A § 50-627(a) including, but not limited to, the following:

        i.   Falsely representing (by implication) that Plaintiff and Class Members would not be charged cancellation fees if they did not, in fact, cancel their reservations; and

        ii.   Engaging in a pattern of conduct that, when taken in its totality, was unconscionable.

    b.   Plaintiff and the Class Members were unable to receive a material benefit from the subject of the transaction, in violation of K.S.A. § 50-627(b)(3). Defendant provided nothing of value to Plaintiff and the Class Members. Defendant incurred only minimal costs (if any) through the pandemic-related cancellations it condoned, and thus its collection of cancellation fees is unjust and inequitable.

81.    Plaintiff and the Class Members are entitled to the recovery of the greater of their actual damages, or if a class is not certified, statutory civil penalties in the amount of $10,000.00 per violation found.

82.    Further, Plaintiff and any other Class Members who meet the KCPA's definition of a "protected consumer" are entitled to "an additional civil penalty not to exceed $10,000 for each such violation" if a class is not certified.  K.S.A. § 50-677.

83.    Plaintiff and the Class Members are also entitled to the recovery of their reasonable attorneys' fees and costs, pursuant to K.S.A. § 50-634(e).

WHEREFORE, Plaintiff and the Class Members seek compensatory damages against Defendant in an amount to be determined at trial and/or statutory damages pursuant to the KCPA; an order enjoining Defendant's unfair, unlawful, and/or deceptive practices and awarding costs, attorneys' fees and restitution, disgorgement of funds; and any other just and proper relief available under the KCPA. *See* K.S.A. § 50-623 *et seq.*

**PLAINTIFF RESPECTFULLY REQUESTS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.**

Dated: March 23, 2021                     Respectfully submitted,

| | |
|---|---|
| | MCINNES LAW LLC |
| | By: */s/ Jack McInnes* |
| | Jack D. McInnes (MO #56904) |
| | Rob Wasserman (MO #69418) |
| | 1900 West 75th Street, Suite 220 |
| | Prairie Village, Kansas 66208 |
| | Telephone: (913) 220-2488 |
| | Facsimile: (913) 347-7333 |
| | jack@mcinnes-law.com |
| | rob@mcinnes-law.com |
| | |
| | A. Scott Waddell (MO #53900) |
| | WADDELL LAW FIRM LLC |
| | 1900 West 75th Street, Suite 220 |
| | Prairie Village, Kansas 66208 |
| | Telephone: (816) 914-5365 |
| | Facsimile: (913) 347-7333 |
| | scott@aswlawfirm.com |
| | |
| | ATTORNEYS FOR PLAINTIFF |

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 23rd day of March 2021, a true and correct copy of the foregoing document was filed with the Clerk of Court via the CM/ECF filing system.

By: _/s/ Jack McInnes_