IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| ANTHONY DELCAVO, *individually and behalf of all others similarly situated*,<br><br>Plaintiff,<br><br>v.<br><br>TOUR RESOURCE CONSULTANTS LLC,<br><br>Defendant. | Case No. 21-2137-JWL-ADM |

## MEMORANDUM AND ORDER

Plaintiff Anthony Delcavo ("Delcavo") filed this putative class action against defendant Tour Resource Consultants LLC ("Tour Resource") after the company retained a $400 registration fee/deposit that Delcavo paid for a trip to Italy that never occurred because of travel restrictions relating to the COVID-19 pandemic. This matter now comes before the court on Delcavo's motion to compel, which seeks a court order requiring Tour Resource to provide information on all trips cancelled from January 2020 to the present. (ECF 74.) For the reasons set forth below, Delcavo's motion is denied for failure to comply with the 30-day rule set forth in D. KAN. RULE 37.1(b).

## I.   BACKGROUND

Delcavo's complaint alleges that members of the Bach Festival Society of Winter Park, Inc. (the "Bach Society") planned to travel to Italy in June 2020 to perform music (the "Italy Trip"). Delcavo's son was a Bach Society member, and Delcavo made plans to go on the Italy Trip with his son and the Bach Society. Tour Resource is a travel agency that specializes in unique, custom-tailored group travel experiences, including tour conception and planning, tour events promotion, and travel logistics. The Bach Society arranged for Tour Resource to provide guided tour services for its members on the Italy Trip. On November 9, 2019, Delcavo paid Tour Resource $400 as an

initial deposit for anticipated tour services. Then the COVID-19 pandemic hit. On March 9, 2020, Italy implemented a nationwide lockdown and barred American tourists from entering the country. On March 16, the Bach Society notified Delcavo that the Italy Trip was postponed. Tour Resource later sent Delcavo a letter stating that it was retaining Delcavo's $400 initial deposit as a cancellation fee. Delcavo claims Tour Resource was not entitled to keep that deposit as a cancellation fee. Delcavo filed this action on March 23, 2021, on behalf of himself and a putative class consisting of persons who were charged cancellation fees by Tour Resource "for tour reservations that could not be completed because of travel restrictions related to the ongoing COVID-19 pandemic." (ECF 1 ¶ 42.) His complaint asserts unjust enrichment, conversion, and Kansas Consumer Protection Act claims. He later filed an amended complaint adding a breach of contract claim. (ECF 19.)

On May 4, 2021, the court entered an Initial Order Regarding Planning and Scheduling that effectively allowed the parties to commence discovery by May 21. *See* FED. R. CIV. P. 26(d)(1) (parties may seek discovery after they have conferred as required by Rule 26(f)). (ECF 15 (setting May 21 as the deadline for the parties' Rule 26(f) conference).) On June 15, the court convened a scheduling conference and entered a scheduling order that largely adopted the parties' proposed discovery deadlines. (ECF 26.) Among other things, the scheduling order set deadlines of October 4 to complete class certification discovery, October 18 for plaintiff to file a motion for class certification, and February 1, 2022, to complete any remaining merits discovery. (*Id.* ¶¶ 2(b), 3(c).) Consistent with the parties' request, the court did not bifurcate discovery.

The docket sheet does not reflect that the parties conducted any discovery before the October 4 deadline to complete class certification discovery. Instead, on that date, they filed a motion to extend the scheduling order deadlines by approximately 90 days, beginning with the

class certification discovery deadline, but they wanted to keep the November 2022 trial date. (ECF 43.) The parties' motion explained that they had exchanged documents and information in exploring the possibility of settlement, but that they still needed to complete "key depositions . . . before . . . class certification can be adequately briefed." (*Id.* ¶ 6.) On October 13, the court convened a hearing on the motion (ECF 45) to confirm that the parties would be able to complete those depositions within their requested extension and adhere to the other revised deadlines so that no further extensions would be requested. The parties explained that they were in the process of scheduling the necessary depositions for late November 2021, so they would be able to obtain the transcripts in time to brief class certification under their proposed extended schedule. (ECF 46, at 1.) In view of this, the court granted the parties' motion and entered a First Amended Scheduling Order that set deadlines of January 4 to complete class certification discovery; January 18 for class certification motions; February 3, March 3, and March 17 for expert disclosures; and May 2 to complete all discovery. (*Id.* at 2.) The court specifically cautioned the parties that they "should anticipate that [the amended] case-management deadlines are firm, and that the court will not grant any further extensions of these deadlines or the trial date absent truly extraordinary circumstances." (*Id.*)

The next day, Delcavo served his first set of requests for production ("RFPs") and interrogatories on Tour Resource. (ECF 48; ECF 74-1 & 74-2; *see also* ECF 61 ¶ 3 ("Plaintiff propounded his first set of discovery requests on Defendant on October 14, 2021.").) These discovery requests did not seek information solely on trips cancelled because of COVID-related travel restrictions. Rather, they more broadly sought information on all trips that Tour Resource cancelled or postponed—for any reason, not just because of COVID-related travel restrictions— between January 2020 to the present.

3

On November 15, Tour Resource served its objections and responses. (ECF 55; ECF 74-3 & 74-4.) In general, Tour Resource provided or agreed to provide responsive information relating to Delcavo and the Italy Trip. However, Tour Resource objected to providing most information and documents pertaining to travelers other than Delcavo and trips other than the Italy Trip. (ECF 74-3 & 74-4.) Tour Resource objected to the broader scope of discovery on the grounds that it was overbroad, unduly burdensome, and sought information and documents that were irrelevant and not proportional to the needs of the case. Those objections noted that the allegations in the amended complaint were narrow, mentioning only the Italy Trip, and that the other trips Tour Resource scheduled to occur after January 2020 had "no relationship to this litigation." (*See, e.g.*, ECF 74-3, at 2; ECF 74-4, at 2.) Delcavo's amended complaint had defined the putative class as all persons charged a fee for trips cancelled "because of travel restrictions related to the COVID-19 pandemic" (*see* ECF 19 ¶ 41), and the only Tour Resource trip cancelled during the relevant time period because of such travel restrictions was the Italy Trip. (*See* ECF 74-8, at 1.) Tour Resource contended that the broader set of documents and information Delcavo was seeking was not relevant to any claim or defense, and not proportional to the needs of the case.

This court's local rules required Delcavo to file any motion to compel responses to its written discovery 30 days later—so, by December 15. *See* D. KAN. RULE 37.1(b). On December 15, Delcavo filed a motion for a 14-day extension of time to file a motion to compel. (ECF 61.) Although Delcavo's motion stated that it was unopposed, the motion did not articulate the specifics of any efforts to confer between November 15 and December 15. Instead, the motion stated that the "parties have generally discussed [Delcavo's] issues" with the discovery responses and "have tentatively scheduled a call on December 17 . . . to discuss the requests in detail." (*Id.* ¶ 7.) The motion stated that Delcavo believed the parties would be able to resolve their dispute so that a

4

motion to compel would be unnecessary. (*Id.* ¶¶ 9, 12.) As is the undersigned's standard practice, the court denied the motion for an extension of time—both because Rule 37.1(b) does not expressly require such a motion and also because boilerplate motions like Delcavo's "rarely provide meaningful insight into the parties' disputes or contain enough information for the court to determine whether the parties are truly engaging in efforts to resolve an identifiable discovery dispute," thus they "are not sufficiently particularized to demonstrate good cause." (ECF 62.) The court therefore explained that Delcavo, if and when he ultimately filed a motion to compel, would need to demonstrate good cause in the motion to compel itself for filing it after the 30-day period by showing that "he acted with diligence in attempting to resolve the particular discovery dispute at issue." (*Id.* at 2.)

The parties' deadline to complete class certification discovery was January 4, 2022. On that date, Delcavo contacted the court to request a discovery conference to discuss the parties' dispute over Tour Resource's responses to his written discovery. When the court convened that discovery conference on January 11, the court alerted Delcavo to its concerns about bringing this dispute to the court's attention so belatedly—beyond the 30-day period set forth in Rule 37.1(b) and shortly before plaintiff's motion for class certification was due on January 18. The court therefore reiterated that Delcavo would need to demonstrate good cause for filing any motion to compel beyond the 30-day period. After discussing the nature of the dispute and determining the parties were at an impasse, the court set a briefing schedule with their input. (ECF 67.)

This matter is now before the court on Delcavo's motion to compel. (ECF 74.) The parties raise essentially two main issues: (1) whether the court should deny Delcavo's motion to compel for failure to comply with the 30-day period set forth in Rule 37.1(b); and (2) whether the discovery sought is relevant. The court begins with a brief discussion of relevance—not because the court

5

decides the current motion on those grounds but rather because the parties' arguments on this point demonstrate the importance of the 30-day period set forth in Rule 37.1(b) in the context of the broader case schedule.

## II. THE QUESTIONABLE RELEVANCE OF THE SUBJECT DISCOVERY THREATENS TO DERAIL THE CASE SCHEDULE.

In assessing the relevance of the subject discovery, the court first notes a threshold issue—specifically, that it is unclear which RFPs and interrogatories are the subject of the current motion. Delcavo's motion does not identify which discovery requests are at issue. In advance of the January 11 discovery conference, Delcavo informed the court that the parties' dispute was over Tour Resource's objections and responses to RFP Nos. 1-9, 11, 12, 14, 15, 25, 27, and 28 and Interrogatory Nos. 2-5, 8, 9, and 12-14. Now, he asks the court to compel Tour Resource to

> fully answer and/or respond to Plaintiff's requests for production and interrogatories. Specifically, Plaintiff requests that the Court issue an order compelling Defendant to provide documents and identifications relevant to (1) the number of trips that were scheduled to occur from January 1, 20[20[1]], through the present but was eventually cancelled, (2) the cost of those trips, (3) whether refunds were issued associated with said cancellation, and (4) the number and identity of travelers that planned to attend these trips.

(ECF 74, at 10.) It is therefore unclear whether all of the discovery requests Delcavo previously identified remain at issue, or if Delcavo has narrowed the information he seeks. Because Delcavo has not stated otherwise, the court will assume that all discovery requests identified prior to the January 11 conference are at issue.

Delcavo's amended complaint defines the putative class as "[a]ll persons who were charged a cancellation fee by [Tour Resource] for tour reservations that could not be completed

---

[1] Delcavo's motion states that he requested information on trips scheduled to occur from January 1, 2019, to the present. (*See* ECF 74, at 8, 10.) But that reference to 2019 appears to be a mistake because the discovery requests generally seek information dating between January 1, 2020, to the present.

*because of travel restrictions* related to the COVID-19 pandemic." (ECF 19 ¶ 41 (emphasis added).) But Delcavo's discovery requests more broadly seek discovery of information relating to *all* Tour Resource trips that had been scheduled to occur between January 2020 to the present, including those cancelled for *any* reason during that time period. Tour Resource's position, as relayed to the court during the January 11 discovery conference, is that the Italy Trip was the only trip that was cancelled because of COVID-related travel restrictions. Tour Resource does not dispute that other trips were cancelled because of subjective concerns over COVID, but Tour Resource does not believe those trips fall within the amended complaint's class definition because travel restrictions were not involved. (*See* ECF 74-8, at 1.)

The parties' dispute about relevance turns on whether a plaintiff is entitled to discovery regarding a class that is broader than the putative class identified in the complaint. Delcavo's motion for class certification seeks certification of a broader class: "All persons who were charged a cancellation fee by [Tour Resource] for tour reservations that were booked before January 1, 2020 but cancelled during the COVID-19 pandemic." (ECF 75, at 1.) Courts have different views on whether a plaintiff may seek to certify a class that is broader than the class defined in the complaint. *See, e.g.*, *In re Namenda Direct Purchaser Antitrust Litig.*, 331 F. Supp. 3d 152, 210-12 (S.D.N.Y. 2018) (recognizing that courts are not bound by the complaint's class definition and determining that a court has discretion to certify a broader class); *Costelo v. Chertoff*, 258 F.R.D. 600, 604-05 (C.D. Cal. 2009) ("The Court is bound to class definitions provided in the complaint and, absent an amended complaint, will not consider certification beyond it."); *see also Zapata v. IBP, Inc.*, 175 F.R.D. 578, 579 n.1 (D. Kan. 1997) (discussing the plaintiffs' attempt to certify a broader class and noting that it ran afoul of "Local Rule 23.1(a)(2)(A), which requires plaintiffs to include the definition of the proposed class in the complaint"). Here, the parties' class certification

7

briefing (ECF 75, 78, 80) disputes the propriety of Delcavo's attempt to broaden the class beyond that alleged in his pleadings. The undersigned does not presume to predict how the district judge will decide the issue, but recognizes that whether the subject discovery is relevant will be decided by the court's ruling on class certification.

The more salient consideration for purposes of the current motion is Delcavo's delay in seeking the broader scope of discovery in the context of the overall case schedule. During the original class certification discovery period (May 21 to October 4), Delcavo's pleadings alleged that the scope of the putative class was persons who paid cancellation fees because of trips cancelled or postponed "because of travel restrictions related to the COVID-19 pandemic." Delcavo did not serve any discovery during that time period. Instead, he served his first set of RFPs and interrogatories on Tour Resource the day after the court granted the parties a 90-day extension of most case-management deadlines based on their representations that they had already exchanged multiple rounds of documents and mediated the case, and only needed additional time to depose witnesses sufficiently in advance of class certification briefing. (ECF 46, at 1.) Only then, on October 14, did Delcavo first serve the subject discovery requests. And, when he finally did serve formal discovery, he did not limit the scope of those discovery requests to trips cancelled because of COVID-related travel restrictions, which Tour Resource says was the single Italy Trip. Rather, Delcavo's discovery was more broadly directed to all trips cancelled from January 2020 on—for any reason.

The breadth of these discovery requests is astounding. According to Tour Resource, expanding the class definition to all cancelled trips would include "travel[] to nearly 6 different countries on approximately 45 separate trips, each with individualized itineraries, group bookings, the use or non-use of a specific travel booking platform, and individualized communications with

8

Tour Resource, each with different reasons for cancellation." (ECF 78, at 2.) Delcavo's discovery requests seek detailed information concerning all of these trips and cancellations. RFP Nos. 1-9, 11-12, 14-15, 25, and 27-28 seek Tour Resource's internal communications and communications with customers regarding trip cancellations and refunds; receipts and records of customer trip deposits and refunds for cancelled trips; agreements with customers that placed deposits; documents relating to cancellation policies; communications with vendors (*e.g.*, hotels, restaurants, entertainment venues, venues, etc.) that were engaged to provide services to customers on those trips; documents regarding complaints, investigations, lawsuits, or arbitrations about cancelled trips; meeting records and minutes regarding cancelling or postponing trips; and documents reflecting Tour Resource's total losses associated with cancelled trips, including payments or amounts Tour Resource expended for trips that ended up being cancelled or postponed for which Tour Resource had not yet obtained a refund. (ECF 74-1.) Interrogatory Nos. 2-5, 8-9, and 12-14 seek a list of all Tour Resource trips cancelled between January 2020 to the present and the cost of those trips; the names and contact information of persons who paid deposits for those trips; a list of the persons who received a refund for cancelled trips, including the amount of and the reasons for the refund; a list of the persons who requested and/or received refunds for those trips and the reasons refunds were issued and/or denied; policies or agreements that would control whether deposits were refunded; an accounting of profits or losses on all cancelled or postponed trips; amounts that Tour Resource retained for trips that were cancelled or postponed; a list of all persons that paid Tour Resource "any amount" for cancelled trips; and all payments or amounts that Tour Resource expended for trips that ended up being cancelled or postponed for which Tour Resource has yet to obtain a refund for. (ECF 74-2.)

9

Tour Resource's class certification briefing argues the expanded class definition deprives it of fair notice by raising various individualized issues, such as the reasons why particular trips were cancelled, the interplay between those reasons and the *force majeure* clause that is at the crux of Delcavo's claims, whether individualized circumstances would make it inequitable for Tour Resource to keep deposits, etc. Consequently, "there are likely to be thousands of pieces of evidence related to the countless individual issues regarding different trips." (ECF 78, at 18.) Tour Resource elaborates on this as follows:

> Plaintiff is requesting a massive trove of information concerning the other trips that would take weeks to compile and screen for sensitive personal information. This includes every single communication sent to every prospective traveler on any trip during 2020, every communication between any agent of Tour [R]esource regarding the other trips, every communication received from any prospective traveler, every agreement with any prospective traveler, every communication with any hotel, restaurant, or any other accommodation on any trip, a timeline of each document that was sent to prospective travelers on each trip, and the identity of each vendor or accommodation on any trip, just to name a few of Plaintiff's facially overbroad requests.

(ECF 76, at 9-10.)

The district judge may or may not find Tour Resource's arguments to be persuasive enough to defeat class certification. But, setting that aside, they persuade the undersigned that, if the court certifies the broader class, Tour Resource would need a full and fair opportunity to develop the discovery record on these broader issues. Even Delcavo seems to recognize the potential impact on the case schedule because, at the January 11 discovery conference, his counsel asked how to handle the then-upcoming class certification and expert disclosure deadlines in view of the looming discovery dispute. The court instructed the parties to adhere to the current deadlines given the court's prior admonition (ECF 46, at 2 ("the court will not grant any further extensions of these deadlines . . . absent truly extraordinary circumstances")) and, if the court later compelled

10

discovery, Delcavo could then seek to supplement his class certification briefing and/or expert disclosures, if warranted. The parties are now in the midst of expert discovery; Delcavo served expert disclosures on February 3 (ECF 79) and Tour Resource's are due on March 3. If the court were to allow discovery on the broader class, it seems doubtful that they would be able to complete this discovery, including the likelihood of needing to supplement expert disclosures, by the May 2 discovery deadline. Accordingly, the key takeaway regarding the parties' dispute about relevance, given the issues presented in the current motion, is that the questionable relevance of the subject discovery threatens to derail the case schedule.

## III. DELCAVO'S MOTION IS DENIED AS UNTIMELY.

The court turns, then, to D. KAN. RULE 37.1(b). This rule requires any motion to compel discovery to be "filed and served within 30 days of the default or service of the response, answer, or objection that is the subject of the motion . . . . Otherwise, the objection to the default, response, answer, or objection is deemed waived." D. KAN. RULE 37.1(b). The rationale behind this rule is to "ensure the court can address discovery disputes while they are still fresh, and in turn expedite litigation." *Black & Veatch Corp. v. Aspen Ins. (UK) Ltd.*, No. 12-2350-SAC-KGS, 2015 WL 13047860, at *5 (D. Kan. Mar. 31, 2015) (quotation omitted). However, a party may file a motion to compel outside of the 30-day time period for good cause shown. D. KAN. RULE 37.1(b).

### A.  Delcavo did not file a motion to compel within the 30-day period.

Delcavo did not file the motion to compel within the 30-day period. Tour Resource served the subject discovery responses and objections on November 15. (ECF 55.) Thirty days later was December 15. On that day, Delcavo instead filed his motion seeking a 14-day extension of time to file a motion to compel. (ECF 61.) That motion did not comply with Local Rule 37.1(b). Delcavo did not attach the discovery requests at issue or specify the nature of the parties' dispute.

11

Instead, he suggested that a motion to compel would be unnecessary, stating that he "believe[d] that the parties can resolve their discovery dispute with the need for Court intervention."  (*Id.* ¶ 9.)  And the motion did not demonstrate good cause to extend the 30-day period because Delcavo provided only a boilerplate explanation of any efforts to resolve the dispute.  (*See id.* ¶ 7 (stating that "[t]he parties have generally discussed [Delcavo]'s issues" with the discovery responses).)  The court therefore denied Delcavo's motion and directed him, if his hypothetical motion to compel came to fruition, to demonstrate good cause for the late filing in the motion to compel itself.  (ECF 62, at 2.)

One further point of clarification.  Delcavo encountered some additional delay in filing the motion to compel because the undersigned requires the parties to first request a pre-motion discovery conference with the court before filing any disputed discovery-related motion.[2]  But even if the court were to consider the date that Delcavo first requested a discovery conference, that did not occur until January 4.  This was beyond the 30-day period.

> **B.      Delcavo has not demonstrated good cause to extend the 30-day deadline.**

The more central issue here is whether Delcavo can demonstrate good cause for filing the motion to compel beyond the 30-day period.  Good cause exists for filing a motion to compel more than 30 days after receiving discovery responses "if the moving party shows it acted diligently in attempting to resolve the discovery dispute at issue."  *Ad Astra Recovery Servs., Inc. v. Heath*, No. 18-1145-JWB-ADM, 2020 WL 5057482, at *7 (D. Kan. Sept. 2, 2020).

Here, the first time Delcavo reached out to Tour Resource about rectifying the alleged deficiencies in the subject discovery responses was via email at 5:10 p.m. on December 15—the day the motion to compel was due.  The email stated:

---

[2] In the court's experience, this practice tends to drastically reduce discovery practice by often eliminating disputes or at least narrowing and focusing the issues for motion practice.

> Dj, we're finalizing a golden rule letter that lays out our problems with your discovery responses, which, in general, relate to limiting your responses to Plaintiff and/or the Bach trip. I think we should be able to resolve these without Court intervention. That said, we need a 14-day extension of time to file a motion to compel, if we're unable to do so. Please confirm you do not oppose and let us know your availability this week for a short meet/confer. Thanks!

(ECF 74-9, at 7.) After the court denied that motion for an extension of time, Delcavo sent the golden rule letter on December 17. (ECF 74-7.) That same day, Delcavo spoke with Tour Resource about the points raised in the letter. (ECF 74, at 3; ECF 74-8, at 1.) During the parties' discussion, Tour Resource agreed to supplement an interrogatory response relating to its counterclaim but reiterated its objections to providing Delcavo with information and documents on any trip other than the Italy Trip. (ECF 74-2, at 1-2.) On December 21, Tour Resource confirmed its position in a written response to Delcavo's golden rule letter. (ECF 74-8.)

Implicit in the 30-day period set forth in Rule 37.1(b) is the requirement that the moving party must begin the process of meeting and conferring with the opposing party in advance of the 30-day deadline. This is because a party must confer or attempt to confer with the other side to attempt to resolve the discovery dispute without court intervention—all before filing the motion to compel. FED. R. CIV. P. 37(a)(1); D. KAN. RULE 37.2. In order to fulfill this obligation, parties must

> deliberate, confer, converse, compare views, or consult with a view to resolve the dispute without judicial intervention. They must make genuine efforts to resolve the dispute by determining precisely what the requesting party is actually seeking; what responsive documents or information the discovering party is reasonably capable of producing; and what specific, genuine objections or other issues, if any, cannot be resolved without judicial intervention.

*LoganTree LP v. Garmin Int'l, Inc.*, 339 F.R.D. 171, 178-79 (D. Kan. 2021) (quoting *Cotracom Commodity Trading Co. v. Seaboard Corp.*, 189 F.R.D. 456, 459 (D. Kan. 1999)). A party cannot meaningfully engage in the meet-and-confer process if it does not initiate this process sufficiently

13

in advance of the 30-day deadline. Consequently, a party does not demonstrate diligence by waiting until the end of the 30-day period to begin attempting to resolve discovery disputes. *See Sonnino v. Univ. Kansas Hosp. Auth.*, 220 F.R.D. 633, 638 (D. Kan. 2004) (denying a motion to compel in part as untimely and stating that "Plaintiff's counsel should not have waited until the thirty-day period had almost expired before communicating with [defense] counsel"); *Garcia v. Palomino, Inc.*, No. 09-2115-EFM-DWB, 2009 WL 10706645, at *2 (D. Kan. Nov. 6, 2009) ("[T]he Court cannot find that Defendant was 'diligent' during the 30-day time period. The Court is troubled that Defendant did not even attempt to contact Plaintiff's counsel regarding these issues until three days before the expiration of the deadline to file a motion to compel."); *see also Benavidez v. Sandia Nat'l Lab'ys*, 319 F.R.D. 696, 729 (D.N.M. 2017) (discussing an analogous local rule and stating that the plaintiff "should not have waited so late in her time period to negotiate the discovery dispute . . . and then wait until the last minute to bring the issue to a head").

The record does not demonstrate that Delcavo was diligent in resolving the discovery dispute at issue. He did not first raise the issue of alleged deficiencies in Tour Resource's written discovery with opposing counsel until December 15, which was 30 days after Tour Resource served the subject discovery responses and objections on November 15. Even then, Delcavo reached out after hours on December 15 only to request Tour Resource's consent to an extension and to foreshadow a forthcoming golden rule letter. This alone fails to demonstrate diligence because Delcavo made no meaningful effort to meet and confer with Tour Resource so as to resolve the issue—let alone bring it to motion practice—within the 30-day period. Even after that, Delcavo's email correspondence reveals that he realized the parties were at an impasse during the parties' conference on December 17 or, at the latest, by December 21 when Tour Resource sent its response to Delcavo's golden rule letter. (*See* ECF 76-1, at 2 ("We disagree with your [response]

14

letter and intend to take this issue to the Court.").)  Yet Delcavo did not first seek the court's intervention until more than two weeks later, on January 4.  And although Delcavo contends that he made a second attempt to confer with Tour Resource about the discovery responses on January 4 (ECF 74, at 4), Delcavo's goal in conferring with Tour Resource on January 4 was instead to discuss the deposition of Tour Resource's corporate representative, Maury L. Schulte ("Schulte").  (*See id.* (discussing Schulte's testimony and requesting a meet and confer).)  A single golden rule letter sent more than 30 days after receiving Tour Resource's discovery responses, followed by a single conference, does not demonstrate diligence.

> **C.** **Delcavo's discussions with Tour Resource regarding depositions do not establish diligence in resolving disputes over written discovery.**

In an attempt to establish diligence, Delcavo asserts that the parties first informally discussed Tour Resource's discovery responses in mid-November 2021, in advance of Schulte's corporate representative deposition.  But the record shows that this conversation was solely about whether Tour Resource would attempt to limit Schulte's responses during the deposition on the same grounds that it objected to Delcavo's written discovery.  (*See* ECF 74, at 2 (stating the concern was that Tour Resource "would limit [the] responses during the corporate representative deposition and thus completely bar [Delcavo] from gaining any information whatsoever regarding any trips planned . . . during the relevant period other than the . . . Italy Trip"); ECF 76, at 2 (stating that Delcavo's counsel wanted to "ensure that [defense] counsel did not instruct the corporate representative to refuse answers to any questions where there were standing discovery objections and that [he] would answer questions related to the deposition topics").)  Tour Resource confirmed that it would not.

The record does not establish that the parties' conversation regarding the Schulte deposition satisfied any meet-and-confer obligation regarding Tour Resource's written discovery

15

responses. Federal Rule of Civil Procedure 30(b)(6) imposes an obligation to "confer in good faith about the matters for examination" separate and apart from written discovery, and Delcavo's attempts to conflate the two are unpersuasive. Several of the deposition topics related to trips "cancelled due to COVID" between January 2020 and the present. (ECF 57, at 2-3.) As Tour Resource's corporate representative, Schulte was required to testify about those topics, and defense counsel would not have been allowed to instruct him not to answer questions based on relevance. *See* FED. R. CIV. P. 30(c)(2) ("A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)."). And it is not surprising that Schulte, if he had knowledge about the Italy trip and its cancellation, also had knowledge about other trip cancellations during the relevant time period. Given that Schulte was already going to be sitting for a deposition regarding the Italy trip cancellation, allowing him to also testify as to whatever knowledge he had about those other trip cancellations would not have been particularly burdensome. In stark contrast, Delcavo's written discovery sought to impose much more substantial burdens on Tour Resource. Tour Resource therefore exercised its right to lodge objections to that written discovery as seeking information beyond the scope of the pleadings. *See, e.g.*, *Scherer v. FCA US, LLC*, 538 F. Supp. 3d 1002, 1005 (S.D. Cal. 2021) ("The allegations in a complaint generally dictate what evidence is discoverable."). There is nothing incongruent about Tour Resource objecting to producing extensive written discovery, yet allowing Schulte to answer questions on that same scope during a single-day deposition that he was required to attend anyway. The discovery obligations are not commensurate.

Delcavo also asserts that he believed Schulte's testimony about other Tour Resource trips, travelers that paid deposits for those trips, Tour Resource's cancellation policies, and how those

16

policies were distributed could "obviate the need for a discovery dispute regarding [the] deficient discovery responses." (ECF 74, at 2.) But Schulte testified as to each of these topics, identifying about 45 other trips that were cancelled due to COVID (ECF 74-6, at 24 (90:1-91:4)), discussing who paid deposits (*id.* at 40-41 (156:13-157:5)), and discussing cancellation policies and how they were distributed (*id.* at 35 (134:1-136:15), 37 (141:25-142:16)). Delcavo does not explain anything about this testimony that caused him to suddenly believe that he needed to pursue the written discovery at the last minute. And although there were some instances where Schulte could not testify with specificity, such as the amounts travelers were paying as deposits for all trips and the amounts received as refunds (*see id.* at 41 (157:7-158:6)), the record does not show any immediate efforts by Delcavo to pursue the written discovery to fill in any testimony gaps. Instead, after Schulte's deposition on November 24, Delcavo's counsel waited until December 17—over three weeks after the deposition—to initiate golden rule correspondence on the written discovery. (ECF 74-7.) This does not demonstrate diligence.

## IV.   CONCLUSION

For these reasons, the court denies Delcavo's motion for failure to comply with the 30-day rule set forth in D. KAN. RULE 37.1(b). The belated nature of this discovery dispute in the context of the overall case schedule undermines the orderly and efficient management of this case. Even Delcavo recognized this. (*See, e.g.*, ECF 74-7 at 2 (stating in the December 17 letter that Tour Resource was "essentially asking [Delcavo] to move for class certification without any information as to the class itself"); ECF 74-10, at 1 (noting in his January 4 email to the court that the deadline to file a class certification motion "is only two weeks away").) The court recognizes that Delcavo's reply states foreshadows that he intends to overcome the 30-day rule by serving "additional discovery requests on Defendant in an effort to procure the information sought by the requests in

dispute here." (ECF 77, at 2.) He certainly has adequate time left in discovery to do so, and the court's decision on class certification might inform the relevance of any such discovery. But, as to the existing set of written discovery, Delcavo did not comply with Rule 37.1(b) in bringing the current motion.

**IT IS THEREFORE ORDERED** that plaintiff Anthony Delcavo's Motion to Compel (ECF 74) is denied.

**IT IS SO ORDERED.**

Dated February 28, 2022, at Topeka, Kansas.

s/ Angel D. Mitchell
Angel D. Mitchell
U.S. Magistrate Judge
