IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| ANTHONY DELCAVO, | ) | |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 21-2137-JWL |
| | ) | |
| TOUR RESOURCE CONSULTANTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| _____ | ) | |

## <u>MEMORANDUM AND ORDER</u>

This matter comes before the Court on plaintiff's motion for class certification (Doc. # 75). As more fully set forth below, the motion is **granted in part and denied in part**. The Court denies plaintiff's motion for certification of a class including participants in all of defendant's canceled trips, but it grants the motion for certification of a narrower class including only participants in plaintiff's particular trip, for the assertion of each of plaintiff's claims other than his claim under the KCPA based on affirmative misrepresentations. Accordingly, the Court certifies the narrower class, and it appoints class counsel and authorizes class notice as set forth herein.

## I.     <u>Background</u>

Defendant provides travel services for groups, and in 2019 a music group, the Bach Festival Society ("Bach"), arranged for defendant to provide services for a June 2020 tour to Italy.  Plaintiff's son was a member of the group, and in November 2019 plaintiff paid defendant $400 as an initial deposit for the trip.  In March 2020, when travel to Italy became impossible in light of the COVID-19 pandemic, Bach's trip and plaintiff's booking were canceled.  Payments by plaintiff and other participants in the Bach trip were refunded by defendant with the exception that defendant retained $400 as a cancellation fee for each participant.

In March 2021, plaintiff filed this putative class action, in which plaintiff has asserted common-law claims for unjust enrichment, conversion, and breach of contract, and a claim under the Kansas Consumer Protection Act (KCPA), K.S.A. §§ 50-626, -627. Defendant has filed a counterclaim for defamation, based on its allegation that plaintiff falsely accused it of having canceled the Bach tour.

## II.     <u>Certification of a Class Including All Trips</u>

"[A] party seeking to maintain a class action must affirmatively demonstrate his compliance with Rule 23."  *See Comcast Corp. v. Behrend*, 569 U.S. 27, 33 (2013) (internal quotation omitted).  Rule 23(a) contains the following four prerequisites:  "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and

adequately protect the interests of the class." *See* Fed. R. Civ. P. 23(a).  In this case, plaintiff seeks certification pursuant to Fed. R. Civ. P. 23(b)(3), which requires that "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *See id.*

In his motion, plaintiff seeks certification of the following class:

> All persons who were charged a cancellation fee by Defendant for tour reservations that were booked before January 1, 2020 but cancelled during the COVID-19 pandemic.

Plaintiff also states in his motion that "[a]ny travelers who directly cancelled their travel plans with Defendant and/or had their deposits fully refunded are excluded" from the proposed class.

In opposing class certification, defendant first argues that plaintiff's proposed class is impermissibly broader than the putative class alleged in plaintiff's amended class action complaint.  In the complaint, plaintiff alleges a class period from January 1, 2020, to the present, and he further alleges that he brings this action on behalf of a class defined as follows:

> All persons who were charged a cancellation fee by Defendant for tour reservations that could not be completed because of travel restrictions related to the COVID-19 pandemic.[1]

---

[1] In the complaint, plaintiff explicitly excludes from the class any judges involved in this case and their families; defendant and its affiliates; defendant's employees; and plaintiff's attorneys.

Thus, plaintiff has changed the class from those with reservations "that could not be completed because of travel restrictions related to the COVID-19 pandemic" to those with reservations "cancelled during the COVID-19 pandemic."  Defendant notes that, according to plaintiff's complaint, the government of Italy (plaintiff's destination) imposed a nationwide lockdown in March 2020 that barred travel to Italy from America by tourists through June 2020 (the month of plaintiff's trip), and within a week the Bach trip had been canceled.  Defendant argues that plaintiff has effectively broadened the alleged putative class from one that encompasses only the Bach group's trip to Italy, which was the only tour that defendant arranged to that country during the class period (a fact not disputed by plaintiff), to one that encompasses all of defendant's tours during the class period that were canceled *during* the pandemic (whether or not the tour was canceled *because of* restrictions related to the pandemic or because of the pandemic generally).

In response to this argument, plaintiff does not argue or cite authority suggesting that the proposed class may be broader than that alleged in the complaint.[2]  Rather, plaintiff insists that he has not broadened his class definition, but that he has merely altered the language of the definition to clarify that "travel restrictions" may include practical considerations that would affect the ability to travel.  Thus, plaintiff argues that the

---

[2] Plaintiff cites the statement in one case that a court may refine the class definition and is not bound by the definition proposed in the complaint.  *See In re EpiPen (Epinephrine Injection, USP) Marketing, Sales Practice and Antitrust Litig.*, 2020 WL 1873989, at *9 (D. Kan. Feb. 27, 2020).  In that case, however, the court was narrowing the class definition from the complaint, and it indicated that it was not bound by a definition that proved too broad.  *See id.*  Plaintiff has not cited any authority indicating that a court may certify a broader class than the one defined in the complaint; nor has plaintiff argued that he should be permitted to do so, or that he has attempted to do so here.

definition alleged in the complaint would also encompass all of defendant's tours, including those to countries other than Italy.

The Court disagrees with plaintiff's interpretation, as it concludes that the complaint, reasonably read, is limited to a class encompassing only trips to Italy canceled because of travel restrictions that made travel to that country impossible.   In the introduction to the complaint, plaintiff alleges that countries began imposing "air-travel restrictions" in February 2020, that Italy implemented a "nationwide lockdown" on March 9, 2020, and that the Bach group advised on March 16, 2020, that plaintiff's reservation would be canceled "because of international travel restrictions caused by the global COVID-19 pandemic."   In his main section of the complaint, plaintiff alleges that the Italian government implemented a lockdown that barred travel from America through June 2020, the month of plaintiff's trip, and that plaintiff's booking was canceled "as international travel had come to a near standstill due to the COVID-19 pandemic."  Plaintiff has not alleged facts about any tour arranged by defendant other than the Bach group's tour, including why any other tour was canceled.   In his class action allegations, in a paragraph entitled "Common Questions of Law or Fact," plaintiff alleges that the "central issue" in the case is whether defendant wrongfully retained class members' fees because of various circumstances present here, including because "the reservation was effectively 'canceled' as a result of international travel restrictions preventing tourists from visiting Italy."   Thus, at broadest, the complaint is reasonably interpreted to allege a putative class consisting of participants in tours offered by defendant that were canceled because travel

to the particular country became restricted, in the sense that travel to that country was no longer permitted as planned.

By his present motion, plaintiff seeks to certify a class encompassing all of defendant's canceled tours, regardless of the circumstances of or reasons for the cancellations. Plaintiff has not provided any evidence about the cancellation of other trips, however, other than defendant's admission (in the deposition of its corporate representative) that all of its trips canceled "due to COVID." Thus, there is no evidence or even an allegation that any other trip was canceled because travel to the destination became restricted. Thus, the Court agrees with defendant that the class proposed in plaintiff's motion is broader than the class proposed in the complaint.

Defendant has cited authority that such a broadening of the class from the complaint is not permitted. *See Krikorian ex rel. TPS Parking Mgmt., LLC 401(k) Plan v. Great-West Life & Annuity Ins. Co.*, 2018 WL 4360539, at *3 (D. Colo. Sept. 13, 2018); *Vincent v. The Money Store*, 304 F.R.D. 446, 453 (S.D.N.Y. 2015). Plaintiff has cited no authority to the contrary. The Court agrees with the courts cited by defendant that such a plaintiff would otherwise be permitted to assert claims not asserted in the complaint despite the lack of an amendment, *see Krikorian*, 2018 WL 4360539, at *3, and that in such event the defendant would have been unfairly deprived of notice of the plaintiff's claims, *see Vincent*, 304 F.R.D. at 453. Plaintiff has not sought to amend his complaint to broaden his proposed class definition. Accordingly, the Court will limit its consideration of certification to a class no broader than that alleged in the complaint, that is, a class encompassing defendant's tours that were canceled because travel to the particular

destinations became prohibited. Plaintiff has not offered evidence or even alleged that any tour other than the Bach group's tour falls within that definition; accordingly, plaintiff's motion will be limited to certification of a class consisting of participants in the Bach tour.

The Court further concludes that, even if a broader class consisting of all of defendant's tours could be considered, plaintiff has not established satisfaction of the Rule 23 requirements for such a proposed class. Specifically, the Court concludes that the questions of law or fact common to class members would not predominate over questions affecting only individual members.

For purposes of Rule 23(a)(2)'s commonality requirement, even a single common question suffices. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011). The Court agrees with plaintiff that there is at least one question common to members of an all-trips class – for instance, the interpretation of the defendant's cancellation policy, which was part of defendant's agreement with each tour group. Under Rule 23(b)(3), however, plaintiff must also show a predominance of common questions over individual issues. The Supreme Court recently explained the predominance inquiry under Rule 23(b)(3) as follows:

> The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation. This calls upon courts to give careful scrutiny to the relation between common and individual questions in a case. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof. The predominance inquiry asks whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. When one or more of the central issues in the action are

7

> common to the class and can be said to predominate, the action may be
> considered proper under Rule 23(b)(3) even though other important matters
> will have to be tried separately, such as damages or some affirmative
> defenses peculiar to some individual class members.

*See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) (citations and internal

quotations omitted).

Moreover, in identifying the common and individual issues present in this case, the

Court must consider the parties' particular theories of recovery and defenses.  In *Wal-Mart*

*Stores*, the Court addressed the standard for satisfying the Rule 23(a) requirements as

follows:

> Rule 23 does not set forth a mere pleading standard.  A party seeking class
> certification must affirmatively demonstrate his compliance with the
> Rule—that is, he must be prepared to prove that there are *in fact* sufficiently
> numerous parties, common questions of law or fact, etc.  We recognized in
> [*General Telephone Co. of Southwest v.*] *Falcon* that sometimes it may be
> necessary for the court to probe behind the pleadings before coming to rest
> on the certification question, and that certification is proper only if the trial
> court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a)
> have been satisfied.  Frequently, that rigorous analysis will entail some
> overlap with the merits of the plaintiff's underlying claim.

*See Wal-Mart Stores*, 564 U.S. at 351 (citations and internal quotations omitted).

Subsequently, in *Amgen Inc. v. Connecticut Retirement Plans and Trust Funds*, 568 U.S.

455 (2013), a case involving certification under Rule 23(b)(3), the Court noted its prior call

in *Wal-Mart* for a rigorous class-certification analysis.  *See id.* at 465-66.  It further noted

its statement from *Wal-Mart* that such analysis may entail some overlap with the merits of

the plaintiff's claim, but the Court made clear that "Rule 23 grants courts no license to

engage in free-ranging merits inquiries at the certification stage," and that "[m]erits

questions may be considered to the extent – but only to the extent – that they are relevant

8

to determining whether the Rule 23 prerequisites for class certification are satisfied." *See id.*  One month later, in *Comcast*, a Rule 23(b)(3) certification case, the Supreme Court stated that a party seeking certification must not only be prepared to prove the Rule 23(a) requirements, but "must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)," and that the same analytic principles governing satisfaction of Rule 23(a) (including consideration of the merits as necessary) govern Rule 23(b).  *See Comcast*, 569 U.S. at 33-34.

In arguing that he has met the requirements of commonality and predominance, plaintiff points to the common issue of the applicability of defendant's cancellation policy. Plaintiff cites evidence that defendant used the same form agreement, containing the same policy, with all of the tour groups with which it contracted, and he argues that the questions of how the policy should be interpreted and whether defendant breached it are common questions that predominate over individual issues.  The policy at issue states that a "cancellation" – to which a cancellation fee schedule applies – has occurred "when one or more Paying Participants communicated by email or fax their intention to cancel their plans to participate in the tour."

The Court agrees with plaintiff that the interpretation of this common policy presents a common question that may be decided on a class-wide basis, but plaintiff has not shown that the issue of defendant's breach of the policy may similarly be decided by common evidence, as that question will likely depend on the particular circumstances of how each trip was canceled.  Similarly, the issue of whether the policy became a part of a

contract between defendant and an individual class member or whether the member otherwise agreed to be bound by the policy likely requires an individualized inquiry.

As noted, plaintiff has not provided any allegations or evidence about the details of any other tour arranged by defendant, including the circumstances of any other tour's cancellation; thus, there is no evidence of how similar other tours were to the Bach group's tour. Plaintiff alleges that his own tour was canceled jointly by defendant and the Bach group – although documents submitted by both parties indicate that the tour was canceled by Bach alone, while a document on which plaintiff relies indicates only that defendant and the booking website canceled plaintiff's *booking* after the tour had been canceled. The issue in plaintiff's case regarding defendant's alleged breach of the policy is whether, after Bach (solely or jointly with defendant) decided to cancel the tour, one or more "Paying Participants" communicated to defendant an intention to cancel their plans to participate in the tour. That inquiry necessarily depends not only on the circumstances of a trip's cancellation, but also the particular communications by the tour group and its participants to defendant.

Those particular circumstances and communications will vary for each trip, however – and plaintiff has not submitted evidence to the contrary – and thus plaintiff has not shown that the issue of the policy's breach may be resolved by class-wide evidence or a class-wide determination. Defendant had over 40 trips (involving over 1,900 participants) canceled during the class period, and mini-trials would be required to determine the relevant facts and consider the relevant evidence for each trip. The Court is

not persuaded that such litigation requiring such individualized inquiry in a single action would be superior to alternative means of resolving the putative members' claims.

Similarly, the question whether each class member was bound by defendant's contract with the member's tour group or otherwise agreed to the terms of the agreement (including the policy) is likely dominated by inquiries and evidence particular to each tour group. In plaintiff's case, the evidence indicates that plaintiff had to agree to the terms of the agreement in order to make his deposit on the online booking platform that defendant offered for the trip. The evidence also reveals, however, that only a small minority of defendant's trips included that booking option. Plaintiff also conceded in his deposition that he had the opportunity to review the policy on at least three occasions and did review it when he booked the trip. At the same time, plaintiff argues in his motion that one question common to the class is whether terms of defendant's standard agreement with tour groups applied to class members "despite the fact that they were not parties to the agreement and did not have the opportunity to review its terms." Whether class members reviewed the policy or other terms of the agreement and whether members agreed to those terms are individualized questions that would predominate over the common questions relating to the policy. This failure to show predominance applies not only to plaintiff's contract claim, but also to his other claims, which depend at least to some degree on the individualized issue of whether defendant failed to comply with its cancellation policy in retaining a particular class member's deposit.

For these same reasons, the Court also concludes that plaintiff has not shown that his claims would be typical of the claims of a class extending to all of defendant's trips –

for instance because only plaintiff's trip involved a government lockdown prohibiting travel to the country, and because plaintiff did review the policy before booking while he suggests that other class members did not.  *See Krikorian*, 2018 WL 4360539, at *4 (plaintiff's claims were not typical of broadened class claims).  Accordingly, the Court denies certification of the class proposed by plaintiff encompassing all of defendant's tours that were canceled during the COVID pandemic.

### III.    Certification of a Class Limited to Plaintiff's Tour

The Court then turns to the issue of the certification of the class alleged in plaintiff's complaint.  As discussed above, plaintiff does not dispute defendant's evidence that the Bach group's tour was the only one of defendant's tours that was canceled because of restrictions of travel to Italy, and plaintiff has not submitted any evidence (or even allegations) concerning the circumstances of the cancellation of any other tour.  Thus, the Court will not certify any class including participants in tours other than plaintiff's tour with the Bach group to Italy.  The Court will consider, however, the certification of a class limited to participants in that tour.

The Court begins by noting that defendant has not addressed this issue of a narrower class in its brief.  Instead, defendant has merely argued that certification of the broader class encompassing all trips is not warranted because such a class goes beyond the class alleged in the complaint and because of the failure to establish the requisite commonality, typicality, adequacy, and predominance.  With respect to the issues of commonality, typicality, and predominance, defendant has based its opposition on the differences

between the other tours and plaintiff's tour.  Thus, defendant has not offered any argument why plaintiff has not satisfied those requirements for certification of a class encompassing only plaintiff's tour, with the exception of the KCPA issue addressed below.

The Court first concludes that the Rule 23(a) requirements are met here.  The Bach tour was arranged for 50 paying participants, and thus this class is so numerous that the joinder of all members would be impracticable.  As noted above, there is at least one question common to the class.  The online booking program was used for participation in this trip, all members of the tour were charged the same cancellation fee upon cancellation of the tour, and prior to cancellation, defendant generally communicated only with the tour group and not with individual participants; thus, plaintiff's claims are typical of those of the class.

In addressing whether named plaintiffs would fairly and adequately protect the interests of the class (the final Rule 23(a) requirement), a court addresses two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?"  *See Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187-88 (10th Cir. 2002) (citation and internal quotation omitted).  In its brief, defendant has argued that plaintiff would not fairly and adequately protect the interests of the broadened class as the class representative, and those arguments would apply also to the certification of a narrower class.  The Court is not persuaded, however, that plaintiff would not be an adequate class representative.

First, defendant points to its counterclaim against plaintiff for defamation. Defendant concedes that the mere existence of a counterclaim does not preclude class certification. *See Heartland Communications, Inc. v. Sprint Corp.*, 161 F.R.D. 111, 116 (D. Kan. 1995) (adequacy is lacking only if the counterclaim raises a conflict between the interests of the named plaintiff and those of absent class members). Defendant nevertheless argues, as it has alleged in the counterclaim, that plaintiff has conducted a campaign of falsely claiming (on websites and to at least three persons) that defendant canceled the Bach tour, and it further argues that plaintiff thus has a particular motivation to get back at defendant for retaining the cancellation fee. Defendant has not shown, however, that plaintiff's interests conflict with those of absent class members, who would also be pursuing claims that defendant improperly retained the fees.

Second, defendant argues that there is a potential conflict of interest between plaintiff and his son, who was a member of the Bach group's tour committee, but defendant has not explained how a conflict truly exists. Defendant suggests that because the tour group itself canceled the tour, plaintiff could be in a position of seeking a judgment against the group and its committee. Plaintiff has not asserted any claims against the group or the committee, however, and the Court is not persuaded that a conflict exists between plaintiff and his son, who would also be a member of the class.

Third, defendant argues that plaintiff's counsel would not diligently represent the class. Defendant argues that counsel's lack of diligence is demonstrated by their failure to file a timely answer to the counterclaim, their failure to file a timely motion to compel, and their assertion of a broader class without amending the complaint. Defendant does not

14

dispute, however, that counsel are experienced class action practitioners, and the present class action would not present particularly complex issues. Accordingly, the Court concludes that plaintiff has shown that he and his counsel would vigorously litigate the class claims and that plaintiff would be an adequate class representative here.

In considering the predominance of common issues over individual issues, the Court considers plaintiff's four claims in turn. With respect to the contract claim, the Court is persuaded that common issues predominate. Although, as discussed above, the circumstances of a tour's cancellation – relevant to defendant's alleged breach of the cancellation policy – vary from tour to tour, those circumstances will be the same for each member of the Bach tour group. Similarly, participants used the online booking system for this trip, and that system provided participants with the terms of the agreement between defendant and the group and required participants' agreement with those terms before payment. The same fee was retained for each member of the tour upon cancellation. Although some participants may have canceled their own bookings prior to the tour's cancellation, those participants are excluded by the class definition.[3]

The Court also concludes that the unjust enrichment claim is capable of class-wide determination. The basic elements of such a claim are "(1) a benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge of the benefit by the defendant; and (3) the acceptance or retention by the defendant of the benefit under such circumstances

---

[3] It appears that members of this class reside in different states (plaintiff is a Colorado resident, while the Bach group is based in Florida), and thus their claims may be governed by various states' laws, but defendant has not identified any relevant issue for which state law may vary in a material way.

as to make it inequitable for the defendant to retain the benefit without payment of its value." *See J.W. Thompson Co. v. Welles Prods. Corp.*, 243 Kan. 503, 512 (1988) (citing secondary sources).  In this case, the equity or inequity of defendant's retention of the cancellation fees will depend most heavily on the circumstances of the cancellation and the costs incurred by defendant in planning the tour, and those facts will be same for each class member.  Similarly, the conversion claim will depend most heavily on whether defendant's retention of the fees was justified by the cancellation policy, which issue may be determined on a class-wide basis. *See Carmichael v. Halstead Nursing Ctr., Ltd.*, 237 Kan. 495, 500 (1985) (conversion is the unauthorized assumption of ownership of another's property).

The Court cannot conclude, however, that class certification is appropriate for the entire scope of plaintiff's KCPA claim.  In opposing certification of the broadened class, defendant has argued that plaintiff must show individualized reliance for each class member, and that common issues thus do not predominate over those individualized inquiries.  The Court agrees, at least to the extent that plaintiff's KCPA claim is based on alleged misrepresentations.

The Court begins with the KCPA's section providing for a private right of action, K.S.A. § 50-634.  Although plaintiff's complaint does not address the issue, it appears that plaintiff has asserted his class claims under the KCPA pursuant to Section 50-634(d), which provides that "[a] consumer who suffers loss as a result of a violation of this act may bring a class action for the damages caused by [the violations]." *See id.* § 50-634(d)(1). In *Benedict v. Altria Group, Inc.*, 241 F.R.D. 668 (D. Kan. 2007), on which defendant

16

relies, the court held that a plaintiff asserting class claims under Section 634(d) based on misrepresentations must show that each class member suffered a loss caused by the defendant's acts and thus that each class member relied on the defendant's misrepresentations. *See id.* at 676-80. The Court is persuaded to reach the same conclusion by the *Benedict* court's analysis. As noted in *Benedict*, the plain language of Section 50-634(d) provides for class claims for damages "caused by" the violations. *See id.* at 679. Moreover, this result is consistent with the Kansas Supreme Court's holding in *Finstad v. Washburn University of Topeka*, 252 Kan. 465 (1993). In *Finstad*, the court addressed Section 50-634(b), which provides for an individual (non-class) action for damages (or civil penalty) by a consumer who is "aggrieved" by a violation of the act. *See id.* at 468-74 (citing K.S.A. § 50-634(b)). The supreme court held that although the statute had been amended by the substitution of "is aggrieved by" for "suffers loss as a result of," a causal connection was still required between the defendant's violation and the plaintiff's damages, which in that case required the plaintiff's reliance on the defendant's misrepresentation. *See id.*; *see also Benedict*, 241 F.R.D. at 677-78 (discussing *Finstad*). As the *Benedict* court noted, Section 634(d) also requires causation for a class action for damages; thus, as in *Finstad*, damages may only be recovered under Section 634(d) if caused by reliance on the misrepresentations. *See Benedict*, 241 F.R.D. at 677-80. In response to the plaintiff's argument that that interpretation would effectively gut the KCPA's class action provision, the *Benedict* court concluded as follows:

> While the court is sensitive to [the plaintiff's] concern, it finds the language of K.S.A. § 50-634(b) requires individual showings of reliance, even if the result is *very* few class certifications in misrepresentation cases. The court is

> unwilling to "rewrite" subsection (d) to find otherwise. If the statute is in need of revision (and it goes without saying that *nobody* has suggested that K.S.A. § 50-634 presents a model of good drafting), the task constitutionally must be performed by Kansas legislators, not a federal judge.

*See id.* at 679-80.  Because of the individualized inquiries necessitated by the requirement to show reliance on the alleged misrepresentations, the court denied class certification.  *See id.* at 680-81.

Defendant has neglected to cite *Nieberding v. Barrette Outdoor Living, Inc.*, 302 F.R.D. 600 (D. Kan. 2014), in which the court considered *Benedict*'s holding to be limited. The court in *Nieberding* relied on the holding of *Finstad* and agreed with the *Benedict* court's conclusion that individual causation is required under the KCPA for class claims, but it concluded that *Benedict*'s holding requiring individual showings of reliance was properly limited to claims involving affirmative misrepresentations, such as those at issue in *Benedict*.  *See id.* at 614-15.  *Nieberding*, however, involved claims under the KCPA based on alleged omissions, and the court stated that the relevant issue was what type of proof is required to show causation for such class claims.  *See id.* at 615.  The court noted the argument made in *Benedict* that a requirement of individualized showings of causation would gut the class action provision, and the court agreed that such a requirement would make "pursuing a class action well nigh impossible," with causation defeating the predominance requirement in virtually every case under the KCPA.  *See id.* The court then noted that the requirement to show omission of a material fact imposed an objective standard (that is, a material fact is one to which a reasonable person would attach importance), which standard distinguishes an omission claim from a misrepresentation

claim, and it concluded that causation in the former case may therefore be shown on a class-wide basis. *See id.* at 616 ("A factfinder will not have to determine whether each plaintiff subjectively relied on the omissions, but will have to determine only whether those omissions were likely to deceive and influence a reasonable person."). Thus, the court concluded that individualized issues did not predominate in that case with respect to causation from the defendant's alleged omissions. *See id.* The Court finds this reasoning applicable here.

In the present case, plaintiff's KCPA claim is based on both an alleged misrepresentation (defendant's statement after cancellation of the tour that it could properly retain plaintiff's deposit) and an alleged omission (defendant's failure to disclose that it would charge a cancellation fee even if plaintiff did not cancel his trip himself). *See Delcavo v. Tour Resource Consultants, LLC*, 2021 WL 4453572, at *4 (D. Kan. Sept. 29, 2021) (Lungstrum, J.) (ruling on defendant's motion to dismiss in the instant case). With respect to a class claim under the KCPA based on the alleged misrepresentation, plaintiff would be required to establish causation for each class member, which would require individualized inquiries into the particular representations made by defendant to each member and whether the member relied on those representations in some way.[4] In light of those individualized inquiries, the Court concludes that common issues would not

_____

[4] Plaintiff's claim based on a misrepresentation presupposes that defendant was not permitted to charge the cancellation fee, as plaintiff alleges that defendant falsely stated that it could charge the fee; but plaintiff has not explained how he could have relied to his detriment on the alleged misrepresentation made by defendant *after* the cancellation, by which time he had already decided to participate in the tour and had already paid his deposit.

predominate as required with respect to such a class claim, and the Court thus declines to certify a class to assert a claim under the KCPA based on alleged misrepresentations.[5]

Plaintiff's claim under the KCPA based on alleged omissions, however, may be proved on a class-wide basis. Plaintiff's theory for such a claim appears to be that, assuming defendant *was* permitted to charge the cancellation fee in this case, defendant failed adequately to disclose its ability to charge that fee prior to plaintiff's decision to book the trip and pay the deposit. That claim will depend on defendant's communications to the group, which will be the same for each class member, as defendant conceded in its deposition that it rarely had communications with individual tour participants prior to a cancellation. The Court concludes that in this case, as in *Nieberding*, for such a claim, which turns on the materiality of the omission, causation may be proved on a class-wide basis. Accordingly, the Court concludes common issues predominate with respect to plaintiff's KCPA claim based on omissions.

Defendant has not argued that a class action would not be superior to other methods of adjudication of the class members' claims, and the Court concludes that the superiority requirement is satisfied here. Although both predominance and superiority must be shown under Rule 23(b)(3), the predominance of common issues in this case makes class resolution superior to litigation of individual suits by all of the class members. *See In re*

---

[5] *Midland Pizza, LLC v. Southwestern Bell Telephone Co.*, 2010 WL 9622191 (D. Kan. Nov. 5, 2010), cited by plaintiff is not persuasive. In that case, the court stated that violation of the KCPA does not require a showing that the consumer was actually misled; but the court cited only Kansas's pattern instructions as supporting authority for that statement, and it did not consider Section 50-634 or the holding of *Finstad*. *See id.* at *3.

*Syngenta AG MIR 162 Corn Litig.*, 2016 WL 5371856, at *11 (D. Kan. Sept. 26, 2016) (Lungstrum, J.); *In re Urethane Antitrust Litig.*, 237 F.R.D. 440, 453 (D. Kan. 2006) (Lungstrum, J.); *see also* 2 William B. Rubenstein, *Newberg on Class Actions* § 4:72 (5th ed. 2012) ("[C]ourts generally hold that if the predominance inquiry is met, then the manageability requirement is met as well.").

Accordingly, the Court will certify a class limited to the members of plaintiff's tour group, for all of plaintiff's claims except his claim under the KCPA based on affirmative misrepresentations, and plaintiff's motion is granted in part, to that extent.

### IV.     <u>Definition of the Class</u>

The Court thus certifies a class defined as follows:  All paying participants in the Bach Festival Society's tour of Italy planned for June 2020 who were charged a cancellation fee by defendant Tour Resource Consultants, LLC , with the exception of any participant who directly cancelled his or her travel plans with defendant or had his or her deposits fully refunded.

The following persons are also excluded from the class:  (a) any judge presiding over this action and the family members of any judge presiding over this action; (b) defendant, its subsidiaries, its parents, its successors, its predecessors, any other entity in which defendant or its parents have a controlling interest, and current or former officers and directors of defendant, its subsidiaries, its parents, its successors, its predecessors, and any other entity in which defendant or its parents have a controlling interest; (c) employees who have or had a managerial responsibility on behalf of defendant, whose acts or

omissions in this matter may be imputed to defendant for purposes of civil or criminal liability, or whose statement may constitute an admission on the part of defendant; (d) the attorneys prosecuting plaintiff's claims; and (e) legal representatives, successors, or assigns of any such excluded persons.

The class is certified for the assertion of plaintiff's claim for breach of contract, plaintiff's claim for conversion, plaintiff's claim for unjust enrichment, and plaintiff's claim under the KCPA to the extent based on alleged material omissions.

### V.   **Appointment of Class Counsel**

Fed. R. Civ. P. 23(g) provides that a court certifying a class must appoint class counsel, *see id.*, and plaintiff has submitted evidence of his attorneys' qualifications and experience, including their experience litigating class actions.  The Court finds such evidence sufficient, and it hereby appoints as class counsel Jack D. McInnes and A. Scott Waddell.

### VI.   **Notice**

Fed. R. Civ. P. 23(c)(2)(B) provides that for classes certified under Rule 23(b)(3), the court must direct notice to the class members.  *See id.*  Plaintiff has submitted a proposed notice, and it requests that the Court order class notice according the following schedule:  (1) defendant shall send plaintiff a spreadsheet with the name, date of birth, Social Security Number, email address, and last known address for each class member within 14 days after entry of the order certifying the class; (2) within 14 days after receiving

22

this information, plaintiff shall send notice to all class members by email and first-class mail; and (3) the opt-out period for the class shall close not earlier than 60 days after mailing of the first class notice.

Defendant has not objected to plaintiff's proposed notice or to any aspect of the proposed schedule.  Accordingly, the Court orders the parties' compliance with that schedule, with one exception.  Plaintiff's proposed notice was based on his broader proposed class, and thus must be amended.  Plaintiff shall submit an amended proposed notice for the Court's approval on or before **April 15, 2022**.  Plaintiff shall then send out the notice within 14 days after the Court's approval of the notice.

IT IS THEREFORE ORDERED BY THE COURT THAT plaintiff's motion for class certification (Doc. # 75) is hereby **granted in part and denied in part**.  The Court denies plaintiff's motion for certification of a class including participants in all of defendant's cancelled trips, but it grants the motion for certification of a narrower class including only participants of plaintiff's particular trip, for the assertion of each of plaintiff's claims other than his claim under the KCPA based on affirmative misrepresentations.  Accordingly, the Court certifies the narrower class, and it appoints class counsel and authorizes class notice as set forth herein.

IT IS SO ORDERED.

Dated this 8th day of April, 2022, in Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge

23