**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| ANTHONY DELCAVO, et al. | ) | |
| | ) | |
| Plaintiffs | ) | Case No. 2:21-cv-02137 |
| | ) | |
| v. | ) | |
| | ) | |
| TOUR RESOURCE | ) | |
| CONSULTANTS, LLC. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM IN SUPPORT OF JOINT MOTION FOR**
**FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff/Counterclaim Defendant Anthony Delcavo, a member of the Rule 23 Settlement Class described below (collectively referred to as "Plaintiffs" or "Class Members"), and Defendant/Counterclaim Plaintiff Tour Resource Consultants, LLC, ("TRC") (collectively, "the Parties") by and through Class Counsel, respectfully submit this Memorandum in Support of the Joint Motion for Final Approval of Class Action Settlement and Memorandum in Support in support for this Court's order finally approving the proposed settlement in this case, certifying the Settlement Class for final settlement purposes, and finding that the Court's notice requirements were fulfilled. In support of this unopposed motion, the Parties state as follows:

## I.    INTRODUCTION

As the Court is aware, after two years of litigation and negotiations, the Parties reached a settlement of Plaintiff's claims against Defendant of Unjust Enrichment, Conversion, Breach of Contract as well as claims under the Kansas Consumer Protection Act alleging Defendant improperly charged cancellation fees to members of the Bach Festival Choir that placed deposits to participate in a trip to Italy and other parts of Europe in June of 2022. The Parties also reached an agreement regarding Defendant's counterclaim against the class representation, which alleged

1

online defamatory statements related to the cancellation of the aforementioned trip. The parties now ask the Court for final approval of their Settlement.

McInnes Law, as the administrator of this settlement, has successfully given notice to each class member both via U.S. Mail and via email and as such, the Court's Notice requirements should be deemed met and Final Approval given.

## II.     BACKGROUND

### A.  The Litigation

Tour Resource is a travel agency that specializes in unique, custom-tailored group travel experiences. Amended Complaint at ¶ 19. The Bach Festival Society of Winter Park, Inc. ("Bach") is a touring musical orchestra, which in early 2019 announced that it would be traveling to Italy in June 2020 to perform. *Id.* at ¶ 20. Plaintiff's son is a member of Bach, and on March 8, 2019, Plaintiff enrolled in a Tour Resource travel experience, which would provide Plaintiff an opportunity to watch Bach perform (the "Italy Trip"). *Id.* at ¶ 21. As part of his reservation for the Italy Trip, Plaintiff paid Tour Resource a $400 deposit. *Id.*

In March of 2020, the novel coronavirus known as COVID-19 began to spread rapidly throughout the world, resulting in the death or infection of hundreds of thousands of people and disrupting international travel plans. On March 9, 2020, the Italian government banned travel from the United States as a result of the pandemic. *Id.* at ¶ 26. On March 16, 2020, Bach canceled its trip to Italy. *Id.* at ¶¶ 11, 28. On March 20, 2020, Tour Resource sent a letter to everyone who had reserved a spot stating that Bach had canceled its performance and the Italy Trip due to the global pandemic. *Id.* at ¶ 30. Of particular importance, Tour Resource notified all travelers that "[t]he initial deposit of $400 will not be refunded and will serve as your cancellation fee," as Tour Resource had already expended a huge monetary sum on now-canceled Italian travel reservations. *Id*. On March 23, 2021, Plaintiffs filed their initial Complaint, alleging that Tour Resource's

2

retention of the $400 cancellation fee constituted unjust enrichment, conversion, and a violation of the KCPA. On May 26, 2021, Plaintiffs filed their Amended Complaint alleging the same.

Since that time, Plaintiffs have engaged in extensive discovery: disclosures, drafting and responding to requests for production and interrogatories, reviewing and cataloguing the Parties' document productions, reviewing sworn deposition testimony, engaged in mediation, and in Plaintiffs' case, worked with an expert to evaluate those materials and calculate damages on a class-wide basis—all in anticipation of trial. On June 15, 2021, this Court issued a scheduling order, setting this matter for jury trial starting November 15, 2022.

**B. The Settlement**

1. <u>The Settlement Consideration.</u>

TRC has agreed to a lump-sum payment of $31,700.00 for the settlement fund within ten days of this Court's final settlement approval, with $12,500.00 of that $31,700.00 going to Class Counsel as the first installment attorney's fees and expenses.[1] This remaining amount of $19,200.00 out of the $31,700.00 fund represents the total amount necessary to fully refund each Class Member for the deposit that they placed with Tour Resources. In addition, TRC has agreed to pay an additional $12,500.00 in attorneys' fees on or before December 31, 2023. TRC further agrees to pay $12,500.00 in flight and hotel benefits to McInnes Law, LLC and Waddell Law Firm LLC for use between January 1, 2023 through December 31, 2023. The calculation of those benefits will be through the Google Travel platform at https://www.google.com/travel/. Finally, TRC further agrees to pay $12,500.00 in flight and hotel benefits to McInnes Law, LLC and Waddell Law Firm LLC for use between January 1, 2024 through December 31, 2024. The calculation of those benefits will be through the Google Travel platform at https://www.google.com/travel/. These present and future payments are the full amount owed

---

[1] *See* Doc. 117-1.

under the Settlement Agreement, and are inclusive of any attorneys' fees, expenses, and service awards that might be ordered by the Court.[2]

    2.   <u>Release of Claims.</u>

Once the Settlement Agreement is final and effective, the Parties shall be released from any claims, liability, or damages that relate to or arise out of conduct related to the Italy Trip and online postings made by Plaintiff Anthony Delcavo up to the date of the execution of this agreement. Plaintiffs also expressly waive and release any and all provisions, rights, and benefits conferred by Kansas Consumer Protection Act or any comparable statutory or common law provision of any other jurisdiction.

    3.   <u>Notice and Implementation of Settlements.</u>

The Settlement Agreement provides for actual notice to the Class Members, as described below. TRC has already produced the last-known mailing and email addresses for all potential Class Members to Class Counsel and the Claims Administrator to facilitate that actual notice. For efficiency and to preserve resources, if the Settlement Agreement is approved, a Notice will be sent out to the Class Members within 14 days of approval of the Settlement Agreement via U.S. Mail and email.

    4.   <u>Plan of Distribution.</u>

Within ten (10) days of execution of this Court's final approval of this settlement, TRC will wire (or cause to be wired) $19,200.00 to serve as direct compensation for each class member and for the first $12,500.00 installment of attorney's fees to McInnes Law, LLC, who will serve as the administrator of the Settlement Funds.[3]  TRC agrees to make a second separate payment of $12,500.00 in attorney's fees to McInness Law, LLC on or before December 31, 2023.  TRC

---

[2] *See* Doc. 117-1.
[3] *See* Doc. 117-1.

further agrees to pay $12,500.00 in flight and hotel benefits to McInnes Law, LLC and Waddell Law Firm LLC for use between January 1, 2023 through December 31, 2023.  The calculation of those benefits will be through the Google Travel platform at https://www.google.com/travel/. TRC further agrees to pay $12,500.00 in flight and hotel benefits to McInnes Law, LLC and Waddell Law Firm LLC for use between January 1, 2024 through December 31, 2024.  The calculation of those benefits will be through the Google Travel platform at https://www.google.com/travel/.

The funds will be held in an interest-bearing account that will be construed to be a "Qualified Settlement Fund" pursuant to applicable IRS regulations.[4] The Claims Administrator will be responsible for sending $400 to each Class Member. The Claims Administrator's decisions shall be final and unreviewable.[5] Class Counsels' attorneys' fees and cost payments are subject to this Court's approval.[6]

### C.  Preliminary Approval and Notice of the Settlement

Notice of the Settlement ("Class Notice") was distributed by McInnes Law by United States mail and email. (Exhibit 1, Declaration of Jack McInnes, at ¶ 3). Settlement Class Members were not required to submit a claim or complete a form to receive payment from the Settlement Fund. (Doc. 117-1). McInnes Law sent Notice via United States mail to Class Members at their last known address as of the time they placed their deposits with Tour Resources that serve as the basis for the Class Members' basis for their claims for relief. Of the letters sent by McInnes Law, only four were returned. (Ex. 1, ¶ 5). To ensure that Class Members received notice, McInnes Law also sent emails to all Class Members at the email addresses provided to Tour Resources by the Class Members when those Class Members were registering for the Italy Trip. (*Id*, ¶ 7).

---

[4] *See* Doc. 117-12.
[5] *See id.*
[6] *See* Exhibit A, ¶ 2.

The Class Notice that was expressly approved by the Court clearly explained to the Class Members their options on how to respond to the Settlement, *i.e.,* whether they wanted to accept benefits, object, or, alternatively, opt out of the Settlement to preserve their individual claims. (Doc. 121, 122-1). As of the filing of this motion, only one Class Member had opted out. No other Class Members have opted out since notice of the Settlement had been distributed. (Ex. 1 at ¶ 10). Moreover, no Settlement Class Members chose to object. (*Id*. at ¶ 11).

Other terms typical of class and collective action settlements are included with this Settlement. Defendant denies wrongdoing, while Class Members confirm their belief in the merits of their claims. (*See* Doc. 117-1). The Settlement reduces the inherent risks and costs of litigation for the Parties.

The parties also asked the Court to retain exclusive jurisdiction over the interpretation, implementation, and enforcement of the Settlement. *(Id)*.

## III.    ARGUMENT

### A.  The Court Should Grant Final Approval of the Proposed Settlement

The Settlement satisfies all final approval inquiries applicable and should be approved. The total settlement amount distributed to Class Members was calculated using simple multiplication to ensure that all Class Members' deposit would be fully reimbursed. As such, under the terms of the Settlement, each Class Member will receive a full refund of their initial deposit that was converted to a cancellation fee without a need to file a claim or take any action at all.

#### 1.  *Final Settlement Approval Standard Under Rule 23*

A class action may not be dismissed, compromised, or settled without the Court's approval. Rule 23(e); *Rutter & Wilbanks Corp. v. Shell Oil Co.*, 314 F.3d 1180, 1187 (10th Cir. 2002). But a settlement should be approved when it is fair, reasonable, and adequate. Rule 23(e)(2); *Fager v. CenturyLink Communs., LLC*, 854 F.3d 1167, 1174 (10th Cir. 2016). This ensures the passive class members are protected "from unjust or unfair settlements affecting their rights when the

6

representatives become fainthearted before the action is adjudicated or are able to secure satisfaction of their individual claims by a compromise." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). The Tenth Circuit looks at four factors to determine if a settlement has met the burden of being fair, reasonable, and adequate:

> (1) whether the proposed settlement was fairly and honestly negotiated; (2) whether serious questions of law and fact exist, placing the ultimate outcome of the litigation in doubt; (3) whether the value of an immediate recovery outweighs the mere possibility of future relief after protracted and expensive litigation; and (4) the judgment of the parties that the settlement is fair and reasonable.

*Fager*, 854 F.3d at 1174. The Settlement at hand easily satisfies these requirements.

(1) <u>The Settlement was Negotiated at Arm's Length</u>

Settlements are presumed fair, reasonable, and adequate when they are "a result of a fair and difficult negotiation." *Campbell v. C.R. Eng., Inc.*, 2015 U.S. Dist. LEXIS 134235, *14 (D. Utah Sept. 30, 2015). Absent evidence of collusion, then the "[a]rm's length bargaining between represented parties weighs in favor of finding a settlement reasonable." *Id.* Further, where such "negotiations between experienced counsel after significant discovery had occurred," settlement results are presumed fair. *See Kurlander v. Kroenke Arena Co., LLC*, 2018 U.S. Dist. LEXIS 62863, *6 (D. Colo. Apr. 13, 2018).

This proposed Settlement is a result of such fair and difficult negotiations between experienced counsel. (Ex. 1 at ¶ 13-15). The parties held informal negotiations and mediated for a full day after which they negotiated further to settle this case. (*Id*). Like opposing counsel, Class Counsel have extensive experience in complex class action litigation, and each has served as lead counsel in numerous complex class action cases. (*See* Docs. 75-11 and 12, Declarations of McInnes and Waddell in support of Rule 23 Class Certification). They have litigated this case zealously on behalf of the Class. Both parties' counsel have worked for months with opposing

counsel after the first mediation to keep the settlement negotiations moving forward and reach a deal that benefited the Class.

    (2) <u>There are Substantial Risks and Additional Costs of Continued Litigation Should the Settlement Not Get Finally Approved</u>

    When serious questions of law and fact exist in a case in which a settlement has been reached, and those complex issues have not yet been addressed, they can "plac[e] the ultimate outcome of the litigation in doubt," and so a settlement "eliminates the difficulties in determining the ultimate outcome" of the case that could impact the results for either side. *Marcus v. State of Kansas*, 209 F. Supp. 2d 1179, 1182 (D. Kan. 2002); *see also e.g., Fager*, 854 F.3d at 1175 (10th Cir. 2016).

    This case presents several open questions such that continuing litigation made the ultimate outcome uncertain for both sides. The Settlement Agreement was the product of a thorough assessment of the strengths and weaknesses of the Parties' respective cases. Although the Parties believe they have meritorious claims, juries can be difficult to predict. And the Parties would almost certainly appeal any adverse finding from the jury. There are real factual disputes about who cancelled the Italy Trip, the authority of a potential agent to make that decision, the adequacy of disclosure regarding TRC's cancellation policy, and whether any outside statements regarding the cancellation were false.

    It is very expensive to litigate any consumer protection case at trial in terms of attorney time and expert costs and expenses. If a jury finds for either party, the verdict will surely be subject to post-trial motions and appeal, which will further delay any recovery.

    Although such delays are not uncommon in consumer-based class actions like this one, they present a heightened risk here considering TRC's financial condition. The COVID pandemic has caused major disruptions to the travel industry. Airline and airport staff shortages in the U.S. and abroad, and the continued nature of the pandemic continues have a chilling impact on group

travel. Accordingly, there is a substantial risk that TRC may not be able to satisfy the kind of damages award that may ultimately result if this case were litigated to judgment. There is a strong basis to approve the Settlement Agreement and guarantee full monetary recovery to the Settlement Class at this juncture. Under the circumstances, the parties determined the benefits of settlement outweigh the uncertain outcome of this complicated litigation.

### (3) The Value of Immediate Recovery Outweighs Any Merely Possible Future Relief Should Litigation Continue

The Settlement's monetary value must then be compared to "the possibility of some greater relief at a later time, taking into consideration the additional risks and costs that go hand in hand with protracted litigation." *In re Sprint Corp. ERISA Litig.*, 443 F. Supp. 2d 1249, 1261(D. Kan. 2006). Where parties face significant risks with continued litigation, "resolution through settlement [is] more valuable than the mere possibility of a more favorable outcome after further litigation," and it makes settlement "even more fair." *Campbell*, 2015 U.S. Dist. LEXIS 134235, at *15.

This Settlement provides complete recovery to Class Members by providing them with a full refund of the deposit they placed with Defendant that was then used to pay for a cancellation fee. Even if the case were to proceed to trial, Class Members would not recover more than what would they are recovering through this settlement. Class Members will each be given a complete refund and as such, there should be no concern regarding an equitable distribution. (Doc. 117-1). Plaintiffs used Defendant's accounting records to confirm the amount that each Class Member paid for their deposit and the identity of each payor. As such, the Settlement's value of immediate recovery favors final approval.

### (4) The Parties Believe the Settlement is Fair and Reasonable

When there are no objections to a settlement agreement reached by competent and experienced legal counsel for the parties, and the parties believe the settlement to be fair and reasonable, final approval of the proposed settlement is favorable. *Campbell*, 2015 U.S. Dist.

LEXIS 134235, at *15; *see also Fager*, 854 F.3d at 1175; *Marcus*, 209 F. Supp. 2d at 1183. Counsel's judgment as to the fairness of the settlement agreement is entitled to considerable weight, where, as here, counsel are attorneys with substantial experience in complex class action litigation and wage and hour class actions and mediated at arms' length with an experienced and respected mediator. *See Lucas v. Kmart Corp.*, 234 F.R.D. 688, 695 (D. Colo. 2006). As of this filing, only one Class Member has opted out[7], and no objections have been received. Final approval is clearly warranted.

### 2.  *Notice Provided to Class Members was Proper and Reasonable*

The Notice provided to Class Members fulfilled the requirements of due process and Rule 23 and was thus proper and reasonable. To satisfy due process, notice is required to be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Fager*, 854 F.3d at 1171. The due process standard does not stand alone but "is coextensive with the requirements of Fed. R. Civ. P. 23(c)(2), which states that class-action notice must be 'the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'" *Id*. United States mail is an endorsed method to prove notice to class members and notice by email is also an accepted method. *Id*. at 1173; *Sobolewski v. Boselli & Sons, LLC*, 2017 U.S. Dist. LEXIS 170657, *7-8 (D. Colo. Oct. 16, 2017).

In this case, notice was as effective and extensive as reasonably achievable given the information available to either party. Because of the small size of the class, the Class is being administered by McInnes Law. McInnes Law, as the settlement administrator, sent notice of the Class Action Settlement which included all relevant information regarding the settlement at issue to each Class Member via U.S. Mail. Pursuant to the Court's Preliminary Settlement Approval

---

[7] The only class member to opt out did so on May 2, 2022 – well before the Settlement Agreement at issue in this motion was negotiated or ratified. (Exhibit 2, Karen Lane Opt-Out Form).

Order on December 8, 2022 (Doc. 121), Notice was sent to all 48 Class Members via both U.S. Mail and via email. (Ex. 1. at ¶ 3). Only four envelopes were returned as undeliverable (*Id*. at ¶ 5). To be certain that all class members were notified of the proposed settlement, McInnes Law then sent notice to all Class Members via email. (*Id*. at ¶ 7). Of the four envelopes that were returned as undeliverable, McInnes Law was able to get into contact with each of these individuals and obtain an updated contact address for each of these individuals. (*Id*. at ¶ 9).

The Notice informed Class Members in plain English about the consequences of participating in, and opting out of, the Settlement. (*See* Doc. 122-1). It disclosed the key terms of the Settlement, including the amount of the Gross Settlement, all payments to be made from the Gross Settlement Amount and Net Settlement Amount (and how the payments from the Net Settlement Amount will be calculated), as well as the nature and extent of the release of claims, the opt-out and objection processes. (*Id*). Because McInnes Law has executed the plan for providing notice to the Class Members as the Court ordered and even went above and beyond the Court's requirement by contacting Class Members via multiple methods of communication, the approved Notice provided to Class Members satisfied due process and Rule 23 requirements and should be approved as proper and reasonable.

## IV.    CONCLUSION

For all the foregoing reasons, Plaintiffs respectfully ask the Court for an Order granting final approval of the Settlement and find that notice requirements were fulfilled. A Proposed Order granting final approval is submitted contemporaneously with this motion as Exhibit 3.

Respectfully submitted,

/s/ *Duvel Pierre*

SHAFFER, LOMBARDO, SHURIN, P.C.

Duvel Pierre,                                    KDC # 78967
2001 Wyandotte Street
Kansas City, MO 64108
816-931-0500
816-931-5775 Fax
djpierre@sls-law.com

SPENCER FANE LLP

Bryant Lamer,                                   KS # 22722
Patrick McAndrews                               KS # 24721
1000 Walnut, Suite 1400
Kansas City, MO 64106
(816) 474-8100
(816) 474-3216 Fax
blamer@spencerfane.com
pmcandrews@spencerfane.com

**ATTORNEYS FOR DEFENDANT**
**TOUR RESOURCE CONSULTANTS, LLC.**

MCINNES LAW LLC
Jack D. McInnes (KS #21898)
Austin O Jaspers (KS #28313)
1900 West 75th Street, Suite 220
Prairie Village, Kansas 66208
Telephone: (913) 220-2488
Facsimile: (913) 347-7333
jack@mcinnes-law.com

By:  /s/ *A. Scott Waddell*
A. Scott Waddell (KS #20955)
WADDELL LAW FIRM LLC
1900 West 75th Street, Suite 220
Prairie Village, Kansas 66208
Telephone: (816) 914-5365
Facsimile: (913) 347-7333
scott@aswlawfirm.com

**ATTORNEYS FOR PLAINTIFFS,**
**ANTHONY DELCAVO, ET AL.**

12

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 27TH day of February, 2023, I filed a true and correct copy of the foregoing motion via CM/ECF, which electronically served all counsel of record.

/s/ *A. Scott Waddell* (KS #20955)
WADDELL LAW FIRM LLC

4854-4839-1251, v. 1